| | |
|---|---|
| ANGELA CONTI and JUSTINE MORA, individuals, on behalf of themselves, and on behalf of all persons similarly situated, | No. 1:19-cv-00769-LJO-SKO |
| Plaintiffs, | FINDINGS AND RECOMMENDATION REGARDING PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT |
| v. | |
| L'OREAL USA S/D, INC., a Corporation, | OBJECTIONS DUE: 21 DAYS |
| Defendant. | (Doc. 9) |

On November 12, 2019, Plaintiffs Angela Conti and Justine Mora, individually and on behalf of all others similarly situated, filed an unopposed motion for preliminary approval of a class action settlement. (Doc. 9.) The motion was referred to the undersigned magistrate judge for findings and recommendation pursuant to 28 U.S.C. § 636(b). The undersigned reviewed Plaintiffs' papers and all supporting material and found the matter suitable for decision without oral argument pursuant to Local Rule 230(g). The hearing set for December 11, 2019, was therefore VACATED. (*See* Doc. 12.)

For the reasons set forth below, the Court RECOMMENDS that Plaintiffs' unopposed motion for preliminary approval be DENIED without prejudice.

# I.  BACKGROUND

## A.  Factual and Procedural History

Defendant is a retail corporation that conducts business throughout California.  (Doc. 1 at 146.)  Defendant employed Plaintiffs as hourly, non-exempt employees.  (*Id.*)  Plaintiffs allege that Defendant required them to work overtime "off the clock" without paying them, by requiring Plaintiffs to "clock out" of the timekeeping system for meal breaks and at the end of each shift and then submit to "loss prevention inspections."  (*Id.* at 148.)  As a result, Plaintiffs allegedly "forfeited overtime wages by working without their time being correctly recorded and without compensation at the applicable overtime rates."  (*Id.*)  Plaintiffs further allege Defendant, "from time to time," failed to allow them to "take off duty meal breaks," did not fully relieve them of duty for meal periods, and did not provide them with a second off-duty meal break per 10 hours of work.  (*Id.* at 149.)  Defendant also allegedly failed to provide Plaintiffs with required rest periods and failed to provide complete and accurate wage statements.  (*Id.*)

On March 6, 2018, Plaintiffs filed this putative class action in Fresno County Superior Court, alleging violations of California Labor Code sections.  (*See* Doc. 1 at 2.)  On April 9, 2018, Plaintiffs filed a first amended complaint, adding a claim under the California Private Attorneys General Act (PAGA), California Labor Code §§ 2698, *et seq.*  (*See id.* at 44.)

On or about April 30, 2019, Plaintiffs filed the operative second amended complaint ("SAC"), alleging claims for (1) unfair competition, in violation of California Business and Professions Code §§ 17200, *et seq.*; (2) failure to pay overtime wages, in violation of California Labor Code §§ 510, *et seq.*; (3) failure to provide required meal periods, in violation of California Labor Code §§ 226.7 and 512 and California Industrial Welfare Commission (IWC) Orders; (4) failure to provide required rest periods, in violation of California Labor Code §§ 226.7 and 512 and IWC Orders; (5) failure to provide accurate itemized statements, in violation of California Labor Code § 226; (6) failure to provide wages when due, in violation of California Labor Code §§ 201, 202, and 203; (7) PAGA violations; and (8) failure to pay overtime compensation, in violation of the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201, *et seq.*  (*See id.* at 145–86.)  Plaintiffs first alleged FLSA claims in this case, and sought to certify an FLSA collective, as part

1 of the SAC filed on April 30, 2019. (*See id.* at 181.) On May 30, 2019, Defendant removed the
2 case to this court. (*Id.*)

3     At some point prior to the filing of the SAC, the parties agreed to engage in informal
4 discovery and participate in early mediation, and exchanged information including the number of
5 potential class members, Defendant's payroll information for the class, and other relevant
6 information. (*See* Doc. 9-1 at 8–9.) On February 13, 2019, the parties participated in a private
7 mediation with mediator Jeffrey Ross. (*Id.* at 10.) Plaintiffs represent that on February 13, 2019,
8 "the Parties agreed to settle the Action pursuant to the terms of a mediator's proposal and set forth
9 in the Parties' Memorandum of Understanding." (*Id.*) The parties then negotiated and executed
10 the proposed settlement agreement that is now before the Court (the "Proposed Settlement"). (*See*
11 Doc. 9-2 at 18–42.)

12 **B.   The Proposed Settlement**

13     For settlement purposes, the class is defined as "all individuals who are or previously were
14 employed by Defendant who worked in California and who were classified as non-exempt during
15 the period March 6, 2014 and February 20, 2018" (the "Settlement Class").[1] (*Id.* at 18.) The
16 Settlement Class is estimated to include 412 members. (Doc. 9-1 at 22; Doc. 9-2 at 11.) The
17 PAGA period is defined as March 6, 2017 to April 20, 2019, and "[a]ny Aggrieved Employees
18 under PAGA who are not in the Class will not receive a Class Notice but will still be mailed their
19 share of the PAGA Payment along with an explanatory letter." (*See* Doc. 9-2 at 2 n.1, 18.)

20     Under the Proposed Settlement, Defendant agrees to pay a maximum settlement amount of
21 $425,000 allocated as follows: (a) class representative service payments of $10,000 to each
22 named Plaintiff; (b) attorney's fees of up to $106,250, to be paid to class counsel, plus reasonable

---

24 [1] The SAC also seeks to certify a "California Labor Sub-Class" and an FLSA "Collective Class." (*See*
25 Doc. 1 at 159, 181.) The "California Labor Sub-Class" is defined as "all individuals who are or previously
were employed by DEFENDANT in California and classified as non-exempt employees . . . at any time
during the period three (3) years prior to the filing of the complaint and ending on the date as determined
26 by the Court[.]" (*Id.* at 159.) The "Collective Class" is defined as "all persons who are or were previously
employed by DEFENDANT in California as non-exempt employees . . . at any time during the period three
27 (3) years prior to the filing of the Complaint and ending on the date as determined by the Court[.]" (*Id.* at
181.) Plaintiffs now seek to certify a single class for the purposes of settlement only. (*See* Doc. 9-2 at
28 18.)

costs incurred (currently estimated to be approximately $12,000); (c) estimated settlement administration costs currently quoted at $15,000 to be paid to the settlement administrator; (d) penalties of $37,500 to be paid to the Labor and Workforce Development Agency ("LWDA") pursuant to California Labor Code § 2699(i); (e) PAGA payments to aggrieved employees totaling approximately $12,500 on a pro rata basis based upon their workweeks;[2] and (f) the remaining net settlement amount to be distributed to the participating class members. (Doc. 9-2 at 22–25.) The net settlement amount will be distributed to class members based on the number of weeks worked for each class member divided by the total weeks worked by all class members during the class period. (*See id.* at 24.)

The Proposed Settlement provides that the settlement amount is non-reversionary: if any checks remain uncashed after 180 days, those amounts will be deposited "with the Unclaimed Property fund maintained by the Controller for the State of California." (*Id.* at 33–34.)

Plaintiffs seek an order (1) conditionally certifying the class for purposes of settlement, with appointment of Plaintiffs as class representatives, appointment of Plaintiffs' counsel as class counsel, and approval of ILYM Group Services as the settlement administrator; (2) preliminarily approving the settlement agreement; (3) approving the proposed form and method of notice to be disseminated to the class and authorizing said notice to be mailed; and (4) scheduling the hearing date for the final approval of the class settlement. (Doc. 9.)

## II.     LEGAL STANDARDS

**A.     Preliminary Class Certification and Approval of Settlement Under Rule 23**

Rule 23 mandates that, "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). The following procedures apply to the court's review of the proposed settlement:

> The court must direct notice in a reasonable manner to all class members who would be bound by the proposal . . . .
>
> If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate . . . .

---

[2] The PAGA payments will be distributed "irrespective of whether the Aggrieved Employee opts out from the Class." (Doc. 9-2 at 24.)

The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.

[ . . . ]

Any class member may object to the proposal if it requires court approval under this subdivision (e).

*Id.*

"Courts have long recognized that settlement class actions present unique due process concerns for absent class members." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (citation and internal quotations omitted). To protect the rights of absent class members, Rule 23(e) requires that the court approve all class action settlements "only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *Bluetooth*, 654 F.3d at 946. However, when parties seek approval of a settlement agreement negotiated prior to formal class certification, "there is an even greater potential for a breach of fiduciary duty owed the class during settlement." *Bluetooth*, 654 F.3d at 946. Thus, the court must review such agreements with "a more probing inquiry" for evidence of collusion or other conflicts of interest than what is normally required under the Federal Rules. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011); *see also Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012).

Review of a proposed class action settlement ordinarily proceeds in three stages. *See* MANUAL FOR COMPLEX LITIGATION (4th) § 21.632. First, the court conducts a preliminary fairness evaluation and, if applicable, considers class certification. Second, if the court makes a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms, the parties are directed to prepare the notice of certification and proposed settlement to the class members. *Id.* (noting that if the parties move for both class certification and preliminary approval, the certification hearing and preliminary fairness evaluation can usually be combined). Third, the court holds a final fairness hearing to determine whether to approve the settlement. *Id.*; *see also Narouz v. Charter Commc'ns, LLC*, 591 F.3d 1261, 1266–67 (9th Cir. 2010). Though Rule

23 does not explicitly provide for such a procedure, federal courts generally find preliminary approval of settlement and notice to the proposed class appropriate if the proposed settlement "appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *Lounibos v. Keypoint Gov't Sols. Inc.*, Case No. 12–cv–00636–JST, 2014 WL 558675, at *5 (N.D. Cal. Feb. 10, 2014) (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) ); *see also* NEWBERG ON CLASS ACTIONS § 13:13 (5th ed. 2011); *Dearaujo v. Regis Corp.*, Nos. 2:14-cv-01408-KJM-AC, 2:14-cv-01411-KJM-AC, 2016 WL 3549473 (E.D. Cal. June 30, 2016) ("Rule 23 provides no guidance, and actually foresees no procedure, but federal courts have generally adopted [the process of preliminarily certifying a settlement class].").

### 1. Preliminary Class Certification

Preliminary class certification is appropriate only if the classes and subclasses "meet the four threshold requirements of Federal Rule of Civil Procedure 23(a): numerosity, commonality, typicality, and adequacy of representation." *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 512 (9th Cir. 2013) (citing Fed. R. Civ. P. 23(a)). If Rule 23(a)'s threshold requirements are met, the proposed class must further satisfy Rule 23(b)(3)'s predominance and superiority requirements. Fed. R. Civ. P. 23(b)(3); *see Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997).

Whenever it reviews requests for class certification, the court "must pay 'undiluted, even heightened, attention' to class certification requirements . . . ." *Staton v. Boeing Co.*, 327 F.3d 938 at 952–53 (9th Cir. 2003) (citations omitted); *see Berry v. Baca*, No. CV 01-02069 DDP, 2005 WL 1030248, at *7 (C.D. Cal. May 2, 2005) (the parties cannot merely "agree to certify a class that clearly leaves any one requirement unfulfilled"). The plaintiff bears the burden of demonstrating that the requirements of Rule 23 have been satisfied as to the proposed class. *See Dukes*, 564 U.S. at 350; *Narouz*, 591 F.3d at 1266. As the Supreme Court explained,

> Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficient numerous parties, common questions of law or fact, etc. We recognized in *Falcon* that "sometimes it

may be necessary for the court to probe behind the pleadings before coming to rest on the certification question," and that certification is proper only if "the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied."

*Dukes*, 564 U.S. at 350 (internal citations omitted) (italics in original). "A court that is not satisfied that the requirements of Rule 23 have been met should refuse certification until [those requirements] have been met." Advisory Committee 2003 Note on Fed. R. Civ. P. 23(c)(1).

2.    Preliminary Settlement Approval

As set forth above, a court may preliminarily approve a class action settlement under Rule 23(e) only if the settlement is fair, reasonable, and adequate. *Bluetooth*, 654 F.3d at 946. "[P]reliminary approval of a settlement has both a procedural and substantive component." *See, e.g., Tableware*, 484 F. Supp. 2d at 1079 (citing *Schwartz v. Dallas Cowboys Football Club, Ltd.*, 157 F. Supp. 2d 561, 570 n.12 (E.D. Pa. 2001)). In particular, preliminary approval of a settlement and notice to the proposed class is only appropriate if: (i) the proposed settlement "appears to be the product of serious, informed, non-collusive negotiations"; and (ii) the settlement "falls within the range of possible approval," has "no obvious deficiencies," and does not "improperly grant preferential treatment" to class representatives or segments of the class. *Id.; see also Ross v. Bar None Enters.*, Inc., No. 2:13–cv–00234–KJM–KJN, 2014 WL 4109592, at *9 (E.D. Cal. Aug. 19, 2014). While it is not a court's province to "reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute," a court should weigh, among other factors, the strength of a plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the extent of discovery completed; and the value of the settlement offer. *Chem. Bank v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992); *see also Officers for Justice v. Civil Serv. Comm'n of City & Cty. of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982).

**B.    FLSA Settlements**

The FLSA establishes certain labor guarantees that cannot be modified by contract, *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 69 (2013), and an employee may bring a collective action under the FLSA representing "similarly situated" employees, but the other employees must

"opt-in" to the action. *See Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1064 (9th Cir. 2000). "Because an employee cannot waive claims under the FLSA, they may not be settled without supervision of either the Secretary of Labor or a district court." *Maciel v. Bar 20 Dairy LLC*, No. 1:17-cv-00902-DAD-SKO, 2018 WL 5291969, at *4 (E.D. Cal. Oct. 23, 2018) (citations omitted).

District courts in the Ninth Circuit typically apply a "widely-used standard adopted by the Eleventh Circuit" to determine whether to approve an FLSA settlement, "which looks to whether the settlement is a fair and reasonable resolution of a bona fide dispute." *Id.* (citing, e.g., *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352–53 (11th Cir. 1982)). If the district court determines there is a bona fide dispute, courts often apply the Rule 23 factors for assessing class action settlements. *See id.* (citations omitted). Courts "have questioned the propriety of allowing an FLSA collective action to proceed in the same case as a Rule 23 class action," but some district courts in the Ninth Circuit nonetheless "have allowed hybrid FLSA/Rule 23 actions to proceed to settlement, particularly where the funds and claims are treated separately." *Id.* at *5; *see, e.g., Thompson v. Costco Wholesale Corp.*, No. 14-cv-2778-CAB-WVG, 2017 WL 697895, at *8 (S.D. Cal. Feb. 22, 2017) ("courts that have approved settlements releasing both FLSA and Rule 23 claims generally do so only when the parties expressly allocate settlement payments to FLSA claims.").

## III.     DISCUSSION

### A.     Rule 23(a) Requirements

#### 1.     Numerosity

The numerosity requirement is satisfied where "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). This requires the Court to consider "specific facts of each case and imposes no absolute limitations." *General Tel. Co. v. EEOC*, 446 U.S. 318, 330 (1980). Courts interpreting the numerosity requirement have identified a variety of factors relevant to whether joinder of all class members would be impracticable including: (1) the number of individual class members; (2) the ease of identifying and contacting class members; (3) the geographical spread of class members; and (4) the ability and willingness of individual

members to bring claims, as affected by their financial resources, the size of the claims, and their fear of retaliation in light of an ongoing relationship with the defendant. *See, e.g., Twegbe v. Pharmaca Integrative Pharm., Inc*., No. CV 12-5080 CRB, 2013 WL 3802807, at *2 (N.D. Cal. July 17, 2013).

Here, Plaintiffs assert that there are approximately 412 class members. (Doc. 9-2 at 11.) The class is readily ascertainable because all class members have worked for Defendant and can be easily identified through Defendant's records. (*See* Doc. 9-2 at 25.) Because the joinder of 412 plaintiffs would be impracticable, the Court finds that this showing with respect to numerosity is adequate to meet the requirements of Rule 23(a)(1). *See, e.g., Collins v. Cargill Meat Sols. Corp.*, 274 F.R.D. 294, 300 (E.D. Cal. 2011) ("Courts have routinely found the numerosity requirement satisfied when the class comprises 40 or more members.").

### 2.      Commonality

The commonality requirement of Rule 23(a)(2) is met where "the class members' claims 'depend upon a common contention' such that 'determination of its truth or falsity will resolve an issue that is central to the validity of each [claim] with one stroke.'" *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 588 (9th Cir. 2012) (quoting *Dukes*, 564 U.S. at 350). Thus, a plaintiff seeking to certify a class must "demonstrate 'the capacity of classwide proceedings to generate common answers' to common questions of law or fact that are 'apt to drive the resolution of the litigation.'" *Id.* (quoting *Dukes*, 564 U.S. at 350, (internal quotation and citation omitted) ). "[C]ommonality only requires a single significant question of law or fact." *Id.* at 589 (citation omitted). "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon*, 150 F.3d at 1019. So long as there are common questions of law or fact that are susceptible to resolution by common proof, Rule 23(a)(2)'s commonality requirement is met. *Cf. Dukes*, 564 U.S. at 353 (finding insufficient commonality where "significant proof that Wal-Mart operated under a general policy of discrimination" was "entirely absent").

Here, Plaintiffs contend sufficient commonality exists because "Defendants [sic] engaged in uniform practices with respect to the Class Members." (*See* Doc. 9-1 at 22.) While

commonality can exist where a defendant has a uniformly-applied break policy or practice that allegedly violates California law, *see, e.g., Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 961–63 (9th Cir. 2013), Plaintiffs' bare assertion that "Defendant[] engaged in uniform practices" is, without more, inadequate to demonstrate commonality. Plaintiffs have submitted no evidence demonstrating the existence of any common practices or policies or the application of such practices in a manner such that class-wide liability could be determined by facts common to all members of the Settlement Class. *See Dukes*, 564 U.S. at 350. In fact, Plaintiffs did not even submit their own declarations to provide evidence of how the practices were applied to them.

Without a more detailed and factually-supported elaboration regarding the practices alleged in the SAC and the application of those practices to the Settlement Class, the undersigned cannot conclude that there are no "dissimilarities within the proposed class" that "have the potential to impede the generation of common answers." *Id.* (citation and internal quotation marks omitted). Because Plaintiffs have not yet shown that class treatment will generate common answers apt to drive the resolution of the litigation, the requirement of commonality is not met.

### 3. Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class [.]" Typicality "refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011). Typicality, in other words, tests "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (quoting *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D. Cal. 1985)). Part of the controlling concern is whether "there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it." *Id.* The "commonality and typicality requirements occasionally merge: 'Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members

will be fairly and adequately protected in their absence.'" *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014) (quoting *Dukes*, 564 U.S. at 349 n.5).

Plaintiffs' counsel states that Plaintiffs are members of the class identified in the settlement agreement. (*See, e.g.*, Doc. 9-1 at 23.) As stated above, however, Plaintiffs have not submitted evidence to support that assertion, such as their declarations. Plaintiffs' motion asserts that "Plaintiffs were employed by Defendant as non-exempt employee[s] in California and, like every other member of the Class, was [sic] subject to the same employment practices concerning overtime work and meal and rest periods" and "Plaintiffs, like every other member of the Class, also claim compensation as a result of the Defendant's uniform policies and practices." (*Id.* at 23.) This bare contention does not establish that Plaintiffs' experience with Defendant is typical or that the putative class injuries are "based on conduct which is not unique to the named plaintiffs." Further, as explained above with respect to commonality, Plaintiffs have not provided evidence that members of the Settlement Class were injured by the same course of conduct by Defendant. Accordingly, Plaintiffs have failed to show the typicality requirement is met.

### 4. Adequacy of Representation

To fulfill the adequacy requirement, the named plaintiff must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To determine whether the named plaintiff will adequately represent the class, courts ask two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020. Indicia of adequacy include, "among other factors, an absence of antagonism between representatives and absentees, and a sharing of interest between representatives and absentees." *Ellis*, 657 F.3d at 985 (citations omitted). Review of the adequacy of representation is "especially critical when the class settlement is tendered along with a motion for class certification." *Hanlon*, 150 F.3d at 1020.

Plaintiffs' counsel has provided a declaration representing that counsel have no conflicts of interest and are experienced litigators who are fully qualified to pursue the interests of the class. (Doc. 9-2 at 12.) The "qualifications of counsel for the representatives" is one of several factors

that the court must consider to determine adequacy, *Brown v. Ticor Title Ins. Co.*, 982 F.2d 386, 390 (9th Cir. 1992), and there is no reason at this stage to doubt that Plaintiff's counsel is competent to prosecute the action.

The undersigned is concerned, however, about the named Plaintiffs and their counsel's ability to fairly and adequately protect the class. "[A] class representative must be part of the class and possess the same interest and injury as the class members." *Amchem*, 521 U.S. at 626 (internal citations omitted). Based on the information submitted, it is not clear that Plaintiffs are adequate representatives of the class, nor that the potential class members have suffered the same injury as Plaintiffs or possess the same interests as Plaintiffs. As stated above, the undersigned has no evidence from Plaintiffs, such as their declarations, setting forth facts to support their adequacy as representatives, including how Defendant's allegedly unlawful policies were applied to them personally. Thus, based on the record before the undersigned, the Court cannot find that Rule 23(a)(4)'s adequacy requirement has been met in this case.

In sum, as Plaintiffs have failed to show commonality, typicality, or adequacy of representation, the undersigned finds Plaintiffs have not satisfied Rule 23(a)'s prerequisites.

**B.  Rule 23(b) Requirements**

Plaintiffs seek certification under Rule 23(b)(3), which requires that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); *see also Amchem*, 521 U.S. at 615. The test of Rule 23(b)(3) is "far more demanding," than that of Rule 23(a). *Wolin v. Jaguar Land Rover N. Am.*, LLC, 617 F.3d 1168, 1172 (9th Cir. 2010) (quoting *Amchem*, 521 U.S. at 623–24).

**1.  Predominance**

First, common questions must "predominate" over any individual questions. While this requirement is similar to the Rule 23(a)(2) commonality requirement, the standard is much higher at this stage of the analysis. *Dukes*, 564 U.S. at 359; *Amchem*, 521 U.S. at 624–25; *Hanlon*, 150 F.3d at 1022. While Rule 23(a)(2) can be satisfied by even a single question, Rule 23(b)(3) requires convincing proof the common questions "predominate." *Amchem*, 521 U.S. at 623–24;

*Hanlon*, 150 F.3d at 1022. "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022.

Plaintiffs contend that their claims raise "common issues" related to "Defendant's uniform and systematic employment policies applicable to non-exempt employees[.]" (Doc. 9-2 at 12.) Plaintiffs further contend that "Defendant engaged in a uniform course of failing to properly pay for overtime work and provide legally compliant meal and rest periods, which resulted in a systematic failure to provide compensation as required by law and that Defendant's policies with respect to these issues are uniform." (*Id.*)

As to Plaintiffs' claims related to rest break meal break, and overtime policies, Plaintiffs have submitted no evidence of a policy or practice under which Defendant's employees were uniformly denied their rest breaks or meal breaks, uniformly denied overtime compensation, and/or uniformly subjected to loss prevention inspections. To the contrary, it appears that Defendant's policies were not uniformly applied. For example, the SAC alleges that "from time to time," Plaintiffs "and other CALIFORNIA CLASS Members" were not provided their required rest periods and were either "unable to take off duty meal breaks" or "not fully relieved of duty for meal periods." (*See* Doc. 1 at 149.) The SAC also states that the meal break violations were in part due to Plaintiffs' "rigorous work schedules." (*See id.*) In the absence of any evidence showing a uniform policy or practice, identifying rest period, meal break and overtime violations would likely require an individual analysis.

The Court would have to ascertain whether Defendant took measures to require an employee to forego some portion of rest period breaks or meal breaks, including a "loss prevention inspection" before they left the premises, such that the employee was not "fully relieved of duty," the nature of such measures, and whether the employee missed part of their break for reasons other than those measures. (*See, e.g.,* Doc. 9-2 at 9 ("Because the claims were based upon loss prevention inspections, meal and rest break claims were only applicable to employees who left the mall premises, which was infrequent."). *See, e.g., Vazquez v. Kraft Heinz*

*Foods Co.*, Case No. 16-cv-2749-WQH-BLM, 2018 WL 4896072, at *12 (S.D. Cal. Oct. 9, 2018) (denying motion to certify rest period subclass where the record contained "no evidence of a policy limiting the movements of the employees during the rest periods."); *Ritenour v. Carrington Mortg. Servs., LLC*, No. SACV 16-02011-CJC(DFMx), 2018 WL 5858658, at *8 (C.D. Cal. Sept. 12, 2018) (finding no predominance where the plaintiffs failed to show the defendant had a rest period policy that was applied uniformly to the putative class members). *See also Dawson v. Hertz Transporting, Inc.*, Case No. CV 17-8766-GW(JEMx), 2018 WL 6112623, at *7 (C.D. Cal. Nov. 5, 2018); *Schroeder v. Envoy Air, Inc.,* No. CV 16-4911-MWF (KSx), 2017 WL 3835804, at *10 (C.D. Cal. Aug. 30, 2017) (denying class certification, finding "[t]he evidence of any on-call policy by Envoy is equivocal at best and . . . . apparently will require the taking of individualized testimony by numerous employees and higher-ups in the company. Even if the existence of the policy were to present a common question, Plaintiffs cannot meet the predominance requirement because proving up Plaintiffs' claims would overwhelm the Court with individualized issues.").

As discussed above with respect to commonality, without any "heightened showing" of the existence of a uniformly-applied rest break, meal break or overtime policy or practice, *cf. Wright v. Renzenberger, Inc.*, Case No. CV 13-6642 FMO (AGRx), 2017 WL 9831398, at *5 (C.D. Cal. Sept. 30, 2017) (finding typicality and certifying class where the plaintiffs "provided substantial evidence that, as a matter of uniform policy," the defendant instructed employees to take rest breaks while on premises and "counted" that time as rest periods), the undersigned cannot at this time conclude that Plaintiffs' rest period, meal break and overtime claims are appropriate for class-wide resolution.

As to Plaintiffs' claims related to unfair competition, failure to provide accurate itemized statements and failure to pay wages when due, these claims all appear to be derivative of Plaintiffs' claims related to rest periods, meal breaks and overtime wages. Because the rest period, meal break, and overtime claims will require individualized inquiry based upon the information currently before the Court, so will these derivative claims. *See Ritenour*, 2018 WL 5858658, at *9–10; *Burnell v. Swift Transp. Co. of Ariz., LLC*, EDCV 10-809-VAP (SPx), 2016

WL 2621616, at *5 (C.D. Cal. May 4, 2016) (finding that "wage statement claim, . . . § 203 claim, and UCL claim are derivative of . . . meal and rest period claims and cannot be adjudicated on a class basis for the same reasons").

## 2. Superiority

Rule 23(b)(3) also requires a court to find "a class action is superior to other available methods for the fair adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). In resolving the Rule 23(b)(3) superiority inquiry, the court should consider "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." *Id.; see Amchem*, 521 U.S. at 616. Where the parties have agreed to pre-certification settlement, however, there is no need to consider the "likely difficulties in managing a class action." *Amchem*, 521 U.S. at 620. Rather, the focus shifts to those requirements that are "designed to protect absentees by blocking unwarranted or overbroad class definitions." *Id.*

In addressing the superiority requirement, the motion states little more than that "[h]ere, a class action is the superior mechanism for the settlement of the claims as pled by Plaintiffs." (Doc. 9-1 at 25.) Aside from this conclusory statement, there is no explanation as to why a class action is the "superior mechanism" for resolution of Plaintiffs' claims. Accordingly, the Court cannot find that Plaintiffs have met their burden under Rule 23(b)(3).

## C. Preliminary Fairness Determination

Plaintiffs contend the Court's scrutiny for purposes of preliminary approval of the settlement should defer to the parties' counsel's agreement that the settlement is fair, reasonable, and adequate, and that the Court need not address whether certification of a settlement class is appropriate or whether the settlement is fair, reasonable, and adequate at this stage. (*See* Doc. 9-1 at 13–14.) However, as this Court recently has clarified, it agrees with the observation of another California district court, that "the idea that district courts should conduct a more lax inquiry at the preliminary approval stage seems wrongs" and lacks a compelling rationale. *See*

*Cotter v. Lyft, Inc.*, 193 F. Supp. 3d 1030, 1036 (N.D. Cal. 2016). Rather, in light of the Court's duty to absent class members, this Court opts to "review class action settlements just as carefully at the initial stage as [it] do[es] at the final stage." *Id.* at 1037; *see Smothers v. Northstar Alarm Servs., LLC*, No. 2:17-cv-00548-KJM-KJN, 2019 WL 280294, at *10 (E.D. Cal. Jan. 22, 2019).

Under Rule 23(e), a court may approve a class action settlement only if the settlement is fair, reasonable, and adequate. *Bluetooth*, 654 F.3d at 946. "[P]reliminary approval of a settlement has both a procedural and substantive component." *See, e.g.*, *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1079 (citing *Schwartz v. Dallas Cowboys Football Club, Ltd.*, 157 F. Supp. 2d 561, 570 n.12 (E.D. Pa. 2001)). In particular, preliminary approval of a settlement and notice to the proposed class is appropriate if: (i) the proposed settlement appears to be the product of serious, informed, non-collusive negotiations; and (ii) the settlement falls within the range of possible approval, has no obvious deficiencies, and does not improperly grant preferential treatment to class representatives or segments of the class. *Id.*; *see also Ross v. Bar None Enters., Inc.*, No. 2:13–cv–00234–KJM–KJN, 2014 WL 4109592, at *9 (E.D. Cal. Aug. 19, 2014).

1.  Procedural Fairness

The Court must consider whether the process by which the parties arrived at their settlement is truly the product of arm's length bargaining, rather than collusion or fraud. *Millan v. Cascade Water Servs., Inc.*, 310 F.R.D. 593, 613 (E.D. Cal. May 31, 2016). A settlement is presumed fair if it "follow[s] sufficient discovery and genuine arms-length negotiation." *Adoma v. Univ. of Phx., Inc.*, 913 F. Supp. 2d 964, 977 (E.D. Cal. 2012) (quoting *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004)).

The Court cannot find that the parties' settlement is procedurally fair based upon the information before the Court. The undersigned is most concerned with the settlement timeline relative to the addition of the FLSA claim in the SAC. The parties represent that they attended mediation on February 13, 2019, and at the end of the mediation session "agreed to settle the Action" and then "negotiated and prepared" the Proposed Settlement. (Doc. 9-1 at 10.) Plaintiffs alleged an FLSA claim for the first time when they filed the SAC in Fresno County Superior Court on April 30, 2019. (*See* Doc. 1 at 181.) Defendant then removed the case to this court on May

30, 2019. (*See* Doc. 1.) The Court is troubled by the belated addition of the FLSA claim, which appears to have been done after the parties had already at least agreed in principle on terms of settlement,[3] and for the apparent purpose of removing the case to federal court. *See Maciel*, 2018 WL 5291969, at *5–6 (denying preliminary approval of class settlement where the plaintiff first alleged an FLSA claim after the parties had settled the case and just before the case was removed to federal court); *Gonzalez v. CoreCivic of Tennessee, LLC*, No. 1:16-cv-01891-DAD-JLT, 2018 WL 4388425, at *4 (E.D. Cal. Sept. 13, 2018) ("In the court's view, this approach raises red flags in large part because it appears plaintiff agreed to settle the FLSA claim before he ever considered litigating it.").

In any event, the parties fail to mention the settlement of the FLSA claim in the motion for preliminary approval, fail to establish that this settlement is "a fair and reasonable resolution of a bona fide dispute over FLSA provisions," 29 U.S.C. § 216(b), and fail to explain the sequence of events surrounding the addition and settlement of the FLSA claim.[4] However, as explained below, the parties have assigned no value to the FLSA claim separate and apart from the remaining claims in the SAC, which suggests that Plaintiffs never seriously considered litigating the FLSA claim and points toward possible collusion between the settling parties. *See Gonzalez*, 2018 WL 4388425, at *4 ("These atypical circumstances create a potentially indelible stain for the settlement agreement as drafted, because they point toward collusion between the parties."). Accordingly, based on the information before the Court, the undersigned cannot conclude that the parties' negotiation was non-collusive and cannot recommend the Proposed Settlement be approved as procedurally fair.

---

[3] The parties appear to have executed the final settlement agreement between September 27, 2019 and November 12, 2019. (*See* Doc. 9-2 at 40–42.) However, as noted, the parties represent that on February 13, 2019, they "agreed to settle the Action pursuant to the terms of a mediator's proposal and set forth in the Parties' Memorandum of Understanding." (*Id.* at 6.) Thus, at minimum, further explanation is required as to the inclusion of the FLSA claim relative to the settlement timeline.

[4] The parties do not request certification of an FLSA collective. The Proposed Settlement does, however, release all claims alleged in the SAC, including the FLSA claim, (Doc. 9-2 at 34), and thus the parties must show that this settlement is a fair resolution of the FLSA claim. *See Maciel*, 2018 WL 5291969, at *6. *Cf. Gonzalez*, 2018 WL 4388425, at *5. The parties' failure to even mention the settlement of the FLSA claim in the motion "reinforces the court's perception that the settlement of the FLSA claim by plaintiffs here was merely an afterthought." *See Maciel*, 2018 WL 5291969, at *6 n.5.

2. <u>Substantive Fairness</u>

    *a.*     *Valuation of the Settlement*

To evaluate the fairness of the settlement award, the court should "compare the terms of the compromise with the likely rewards of litigation." *See Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424–25 (1968). "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). To determine whether a settlement "falls within the range of possible approval" a court must focus on "substantive fairness and adequacy," and "consider plaintiffs' expected recovery balanced against the value of the settlement offer." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1080.

    i.     California Labor Code Claims

Here, the total proposed settlement is for $425,000. (Doc. 9-2 at 20.) Plaintiffs' counsel represents that the total potential recovery for "overtime damages" is $383,622, and the total potential recovery for "meal and rest period damages" is $511,496, for a total of $895,118, making the total settlement fund of $425,000 a 47 percent recovery of the plaintiffs' primary claims. (*See* Doc. 9-1 at 17.) However, Plaintiffs do not provide any separate estimate of the potential statutory penalties for their claims for failure to provide accurate wage statements and failure to provide wages when due and do not include those amounts in the total potential recovery.

If Plaintiffs intended for the "overtime damages" and "meal and rest period damages" to represent some combination of the potential wages recovery on their primary claims and the potential derivative statutory penalties, they must explain that and differentiate between the values.[5] If Plaintiffs are discounting the value of their claims for failure to provide accurate wage

---

[5] The only mention of any differentiation between wages and penalties is on page 8 of the Proposed Settlement, which states that each class member's settlement share will be treated for tax purposes as 50% wages and 50% "interest and penalties." (*See* Doc. 9-2 at 25.) This does not explain what percentage of the $425,000 estimate, if any, represents statutory penalties for what claim in the SAC, and neither the Proposed Settlement nor the motion differentiates the amounts designated as recovery for wages related to each primary claim and statutory penalties related to each derivative claim, or the maximum potential recovery for wages related to each primary claim and statutory penalties related to each derivative claim.

statements and failure to provide wages when due entirely, and/or asserting that the maximum statutory penalties should not be included in the total potential recovery calculation, they must provide legal authority and explanation as to why that is appropriate. *See Murray v. Scelzi Enterprises, Inc.*, No. 1:18-cv-01492-LJO-SKO, 2019 WL 6045146, at *10–11 (E.D. Cal. Nov. 15, 2019), report and recommendation adopted, 2019 WL 6840411. Thus, without more information, the Court cannot determine that the settlement amount is fair.

ii.     PAGA Penalties

Plaintiffs' counsel has similarly not provided an estimate for the maximum potential PAGA penalties and has not included those penalties in the maximum potential recovery. The PAGA statute requires trial courts to "review and approve" any settlement of PAGA claims. Cal. Lab. Code § 2699(l)(2).[6] In the absence of authority governing the standard of review of PAGA settlements, the LWDA has in one action provided some guidance to the court. *O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110, 1133 (N.D. Cal. 2016). There, where both class action and PAGA claims were covered by a proposed settlement, the LWDA acknowledged that it was "not aware any existing case law established a specific benchmark for PAGA settlements, either on their own terms or in relation to the recovery on other claims in the action" but stressed that:

> [W]hen a PAGA claim is settled, the relief provided for under the PAGA be genuine and meaningful, consistent with the underlying purpose of the statute to benefit the public and, in the context of a class action, the court evaluate whether the settlement meets the standards of being "fundamentally fair, reasonable, and adequate" with reference to the public policies underlying the PAGA.

*Id*.; *see also Sanchez v. Frito-Lay, Inc*., No. 1:14-cv-00797-DAD-BAM, 2019 WL 4828775, at *12 (E.D. Cal. Sept. 30, 2019).

Plaintiff cites no authority that PAGA penalties should not be considered in the total estimated value of the class claims. While the damages awarded under PAGA do not inure entirely to the benefit of the class, courts have held that the full amount of the awardable penalties should be considered in establishing the fairness of the settlement. "Just because the State would receive [seventy-five percent of the penalty] doesn't mean it's not part of the penalty. To the

---

[6] The proposed settlement must also be submitted to the LWDA at the same time it is submitted to the court. *Id*.

19

contrary, a PAGA plaintiff stands in the shoes of the State in enforcing its wage and hour laws." *Cotter*, 176 F. Supp. 3d at 942. "[I]t makes no sense to simply erase the State's portion of the recovery when estimating the maximum value of the claim." *Id*. The Court must also determine that the percentage of PAGA penalties provided for in the settlement is reasonable relative to the maximum PAGA penalties allowed. *See O'Connor*, 201 F. Supp. 3d at 1133–34. The Court is unable to assess the adequacy of the settlement valuation without this information.

### iii. FLSA Claim

Finally, it appears that Plaintiffs have discounted the value of the FLSA claim entirely. Plaintiffs do not mention any valuation of the FLSA claim or seek any recovery as to the FLSA claim. Plaintiffs have offered no explanation as to why no separate amount is being paid by Defendant to settle the FLSA claim. *See Maciel*, 2018 WL 5291969, at *6 ("That the settlement . . . calls for a release of the FLSA claim in exchange for no consideration does not appear to be a 'fair and reasonable resolution of a bona fide dispute over FLSA provisions.'") (citing 29 U.S.C. § 216(b). As noted above, "courts that have approved settlements releasing both FLSA and Rule 23 claims generally do so only when the parties expressly allocate settlement payments to FLSA claims."[7] *See Thompson*, 2017 WL 697895, at *8; *see also Khanna v. Intercon Sec. Systems, Inc.*, 2014 WL 1379861, at *2 (E.D. Cal. Apr. 8, 2014) (approving hybrid FLSA/Rule 23 settlement that allocated two-thirds of net settlement amount to state claims and one-third of amount to FLSA claim); *Pierce v. Rosetta Stone, Ltd.*, No. C 11-01283 SBA, 2013 WL 1878918, at *3 (N.D. Cal. May 3, 2013) (same). The parties have not done that here and Plaintiffs have provided no explanation for failing to do so.

Thus, the Court cannot find that the valuation of the FLSA claim is adequate and, for that

---

[7] In addition to showing that the settlement is a fair resolution of the FLSA claim, Plaintiffs must show that adequate consideration is being paid to settle the FLSA claim. *See Maciel*, 2018 WL 5291969, at *6. *Cf. Gonzalez*, 2018 WL 4388425, at *5 ("Plaintiff's approach to settling the FLSA claims here is apparently premised on the assumption that a single plaintiff cannot recover for violations of both the FLSA and state wage-and-hour laws . . . District courts in the Ninth Circuit, however, have held the opposite[.]") (collecting cases). To the extent they intended for damages under the FLSA claim to be covered under the "overtime damages," (*see* Doc. 9-1 at 17), the parties are advised that consideration to release an FLSA claim must be explicitly allocated in the settlement agreement **separately** from any consideration paid to release state law overtime wages claims. *See Thompson*, 2017 WL 697895, at *8.

reason, cannot find the Proposed Settlement is substantively fair as to the release of FLSA claims.[8] *See Maciel*, 2018 WL 5291969, at *6 ("[I]f defendant insists that class members release a bona fide FLSA claim, defendant should pay fair and reasonable consideration for that release. If that is not the case, the parties must provide the court with a more thorough explanation than they have to date.").

                              iv.     Summary

In light of the foregoing, the undersigned cannot conclude that Plaintiffs have made an adequate showing sufficient to warrant a preliminary finding that the Proposed Settlement is fair, reasonable, and adequate. As set forth above, while the gross settlement amount, as calculated by Plaintiffs, represents 47 percent of the potential recovery for the rest and meal break and overtime wages claims alone, Plaintiffs do not appear to include in the total potential recovery the statutory penalties for the derivative claims, the PAGA penalties claim, or the FLSA claim, and have offered no justification for failing to include those claims in the potential recovery. To address whether a proposed settlement is substantively fair or adequate, courts must "consider plaintiffs' expected recovery balanced against the value of the settlement offer." *Tableware,* 484 F. Supp. 2d at 1080. In the absence of an accurate valuation of Plaintiffs' claims, the undersigned is unable to balance the Proposed Settlement against the expected recovery of those claims and therefore cannot find that the Proposed Settlement is reasonable or "within the range of possible approval." *Tableware,* 484 F. Supp. 2d at 1079.

                      b.     *Incentive Payment*

Plaintiff also requests that the Court approve an incentive payment in an amount "up to" $10,000 to be awarded to Plaintiffs Angela Conti and Justine Mora. (Doc. 9-1 at 10, 19.) Without clarification as to what is meant by "up to," the undersigned assumes that Plaintiff will be requesting $10,000.

A district court may award incentive payments to named plaintiffs in class action cases.

---

[8] The Court notes that the proposed notice explicitly advises class members that the "**release specifically includes claims under the federal Fair Labor Standards Act based on the facts or theories raised in this lawsuit. If you do not exclude yourself from this settlement, you will have waived those claims.**" (*See* Doc. 9-2 at 47) (emphasis in original).

*Rodriguez*, 563 F.3d at 958–59. The purpose of incentive awards is to "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaking in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Id.* To justify an incentive award, a class representative must present "evidence demonstrating the quality of plaintiff's representative service," such as "substantial efforts taken as class representative to justify the discrepancy between [his] award and those of the unnamed plaintiffs." *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 669 (E.D. Cal. 2008). Such incentive awards are particularly appropriate in wage-and-hour actions where a plaintiff undertakes a significant reputational risk in bringing suit against her former employer. *Rodriguez*, 563 F.3d at 958–59.

The Ninth Circuit has emphasized, however, that "district courts must be vigilant in scrutinizing all incentive awards." *Radcliffe v. Experian Info. Sols., Inc.*, 715 F.3d 1157, 1165 (9th Cir. 2013) (internal quotation marks and citation omitted). In keeping with that admonition, district courts have declined to approve incentive awards that represent an unreasonably high proportion of the overall settlement amount or are disproportionate relative to the recovery of other class members. *See Ontiveros v. Zamora*, 303 F.R.D. 356, 365–66 (E.D. Cal. 2014) (finding an incentive award of $20,000, comprising 1% of the common fund, to be excessive under the circumstances, and reducing the award to $15,000, where class representative spent 271 hours on the litigation and relinquished the opportunity to bring several of his own claims in order to act as class representative); *see also Ko v. Natura Pet Prods.*, Inc., No. C 09–2619 SBA, 2012 WL 3945541, at *15 (N.D. Cal. Sept. 10, 2012) (holding that an incentive award of $20,000, comprising one percent of the approximately $2 million common fund was "excessive under the circumstances" and reducing the award to $5,000); *Wolph v. Acer Am. Corp.*, No. C 09–01314 JSW, 2013 WL 5718440, at *6 (N.D. Cal. Oct. 21, 2013) (reducing the incentive award to $2,000 where the class representatives did not demonstrate great risk to finances or reputation in bringing the class action). In reducing the award, courts have noted that overcompensation of class representatives could encourage collusion at the settlement stage of class actions by causing a divergence between the interests of the named plaintiff and the absent class members, destroying

the adequacy of class representatives.  *See Staton*, 327 F.3d at 977–78; *see also Radcliffe*, 715 F.3d at 1165.

Here, the Proposed Settlement provides for a maximum incentive award of $10,000 each for the named Plaintiffs.  The undersigned finds that the proposed $10,000 incentive awards appear to be excessive under the circumstances of the case.  It is two times the amount that the Ninth Circuit has considered reasonable.  *See Resnick v. Frank (In re Online DVD–Rental Antitrust Litig.)*, 779 F.3d 934, 947 (9th Cir.2015).  The total of $20,000 also constitutes 4.7 percent of the gross settlement amount.  *See Sandoval v. Tharaldson Emple. Mgmt.*, No. EDCV 08-482-VAP (OPx), 2010 WL 2486346, at *9–10 (C.D. Cal. June 15, 2010) (collecting cases and concluding that plaintiff's request for an incentive award representing one percent of the settlement fund was excessive). *See also Sanchez,* 2015 WL 4662636, at *20–21 (recommending $10,000 incentive award payment to named plaintiff be reduced to $7,500), report and recommendation adopted, No. 1:14-CV-797-AWI-MJS, 2015 WL 5138101 (E.D. Cal. Aug. 26, 2015).

Thus, the undersigned cannot recommend approval of an incentive award in the amount of $10,000 at this time.  Should Plaintiffs renew their request for an incentive award that amounts to a similarly high proportion of the overall settlement amount or is disproportionate relative to the recovery of other class members, they shall submit evidence that the requested award is warranted here, including evidence of the specific amount of time Plaintiffs spent on the litigation, the particular risks and burdens carried by Plaintiffs as a result of the litigation, and the particular benefit that Plaintiffs provided to counsel and the class as a whole throughout the litigation.

>            c.        *Opt-Out Procedure*

Due process requires that any class member bound by a class action settlement, at a minimum, be afforded the opportunity "to remove himself from the class."  *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 848 (1999) (citation and internal quotation marks omitted).  Here, the Proposed Settlement and notice are devoid of any provision that would exclude members from the Settlement Class who do not receive the notice of this litigation.

Unless a class member elects to opt-out of the settlement, according to the Proposed Settlement, they are subject to the above-described release. (*See* Doc. 9-2 at 30, 47.) A class member cannot opt out of the litigation, however, unless they submit a request to be excluded, (*see id.*), and a class member cannot request to be excluded unless they have notice of the litigation. Under the Proposed Settlement, the settlement administrator would send a notice form to the last-known address of each class member via first-class mail. (*Id.* at 28.) In the event the notice mailed to a class member is returned as undeliverable, the administrator shall perform a "skip-tracing" search and seek a "more current address" for such class member, at which time a second notice will be mailed. (*Id.*) The Proposed Settlement does not address situations where no address correction is obtained as a result of the skip trace search, or where the second class notice is returned as undeliverable. In those situations, due process would require those class members be excluded from the Settlement Class. *See, e.g., Sanchez*, 2015 WL 4662636, at *12. Because the Proposed Settlement does not appear to exclude from it any class member whose class notice is returned as undeliverable by the post office (either on the first or second attempt), the undersigned cannot conclude that the Proposed Settlement affords minimum due process to each of the putative class members.

## IV.  CONCLUSION AND RECOMMENDATION

The undersigned finds that Plaintiffs have not demonstrated that conditional class certification under Rule 23(a) and (b)(3) or preliminary approval of the Proposed Settlement is warranted. While the undersigned is mindful of the strong judicial policy favoring settlements, *see Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992), this settlement cannot be approved without significant additional information and amendment. It is therefore **RECOMMENDED** that Plaintiffs' motion for preliminary approval of a class action settlement (Doc. 9) be **DENIED**, without prejudice to Plaintiff renewing the motion to address the issues and concerns identified herein.

These findings and recommendation are submitted to the district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l)(B) and this Court's Local Rule 304. Within twenty-one (21) days of service of this recommendation, any party may file written

objections to these findings and recommendation with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." The district judge will review the magistrate judge's findings and recommendation pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:  **January 27, 2020**  _____ /s/ *Sheila K. Oberto* _____

UNITED STATES MAGISTRATE JUDGE