1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

EASTERN DISTRICT OF CALIFORNIA

10
11

ANGELA CONTI and JUSTINE MORA,
individuals, on behalf of themselves and on
behalf of all persons similarly situated,

No.  1:19-cv-00769-JLT-SKO

12

ORDER GRANTING PLAINTIFFS' MOTION
FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT

13

Plaintiffs,

14

v.

(Doc. 28.)

15

L'OREAL USA S/D INC., a Corporation;
and DOES 1 through 50, inclusive,

16
17

Defendant.

18

Angela Conti and Justine Mora assert that L'Oreal USA S/D Inc. failed to comply with

19

California wage and hour laws by failing to pay all wages due and provide proper meal and rest

20

breaks.  Conti and Mora now seek preliminary approval of a settlement reached in this action.

21

Specifically, Plaintiffs seek: (1) conditional certification of the settlement class; (2) preliminary

22

approval of the settlement terms; (3) appointment of Conti and Mora as the class representative;

23

(4) appointment of the firm of Blumenthal Nordrehaug Bhowmik De Blouw LLP as class

24

counsel; (5) approval of the class notice materials; (6) appointment of ILYM Group as the

25

settlement administrator; and (7) scheduling for final approval.

26

The Court reviewed the proposed settlement between the parties, as well as the moving

27

papers.  For the following reasons, the motion for preliminary approval of the class settlement is

28

1

1     **GRANTED**.

2     **BACKGROUND**

3     **A.**     **Factual Background**

4     L'Oreal is a retail corporation that conducts business throughout California and

5 employed Conti and Mora as hourly, non-exempt employees.  (Doc. 1 at 146.)  Conti and Mora

6 worked as vendors at L'Oreal makeup counters operated within Macy's department stores.

7 (Doc. 39 at ¶ 3.)  Conti and Mora bring claims against L'Oreal for labor violations related to

8 overtime calculations and meal and rest breaks.  First, Conti and Mora bring "overtime claims"

9 by alleging that L'Oreal required them to work overtime without pay.  Plaintiffs specifically

10 complain about Defendant's policy requiring employees submit to "loss prevention inspections"

11 at the beginning and end of each shift while employees were "off the clock."  (*Id*. at 148.)

12 Plaintiffs allege these practices resulted in forfeited overtime wages for employees who were

13 caused to work without their time being correctly recorded during the loss prevention

14 inspections.  (*Id.*)  Plaintiffs allege that Defendant's policies prevented employees from taking

15 full, truly "off-duty" meal breaks because "cell phones[, ] personal conversations . . . food, drink

16 and chewing gum" were not permitted on the selling floor.  (Doc. 28-3 at 3.)  Therefore, to enjoy

17 a truly "duty-free" break, employees had to leave the premises—which required them to submit

18 to off-the-clock loss prevention inspections.  (Docs. 28-3 and 28-4 at 3.)  Plaintiffs additionally

19 allege that Defendant failed to provide off-duty meal breaks, did not relieve employees of duty

20 for meal periods, and/or did not provide plaintiffs with a second off-duty meal break per ten

21 hours of work.  (Doc. 1 at 149.)  Defendant also allegedly failed to provide plaintiffs with

22 required rest periods and did not always provide complete and accurate wage statements.  (*Id.*)

23     **B.**     **Procedural History**

24     Plaintiffs filed this putative class action in Fresno County Superior Court on March 6,

25 2018, alleging violations of California Labor Code sections.  (Doc. 1 at 2.)  Plaintiffs then filed

26 two amended complaints, first adding a claim under the California Private Attorneys General

27 Act ("PAGA"), California Labor Code §§ 2698, *et seq*., and then adding additional claims for (1)

28 unfair competition in violation of California Business and Professions Code §§ 17200, *et seq.*;

1  (2) failure to pay overtime wages in violation of California Labor Code §§ 510, *et seq.*; (3)

2  failure to provide required meal periods in violation of California Labor Code §§ 226.7 and 512

3  and California Industrial Welfare Commission (IWC) Orders; (4) failure to provide required rest

4  periods in violation of California Labor Code §§ 226.7 and 512 and IWC Orders; (5) failure to

5  provide accurate itemized statements in violation of California Labor Code § 226; (6) failure to

6  provide wages when due in violation of California Labor Code §§ 201, 202, and 203; (7)

7  additional PAGA violations; and (8) failure to pay overtime compensation in violation of the

8  Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq*. (*See id*. at 145–86.)

9    The parties then engaged in informal discovery and mediation before agreeing to a

10  settlement first presented to the court on November 12, 2019.  (*See* Doc. 9-2 at 6, 18–42.)  The

11  proposed settlement was valued at $425,000, which encompassed recovery for both the overtime

12  and "meal and rest period" claims.  (Doc. 28-1 at 18.)  The Court[1] reviewed this first settlement

13  and found a number of concerns regarding the adequacy of named Plaintiffs as representatives of

14  the class, including Plaintiffs' failure to demonstrate sufficient commonality between the class

15  members, (Doc. 13 at 10, 12), and Plaintiffs' failure to show that their experience with defendant

16  was typical or that the putative class injuries were "based on conduct which is not unique to the

17  named plaintiffs."  (*Id*. at 11.)   The Court noted that Plaintiffs additionally submitted no

18  evidence demonstrating the existence of employment practices or policies common to all

19  putative members of the settlement class.  (Doc. 16 at 2.)

20    The Court further questioned whether, under Rule 23(e), the settlement was fair,

21  reasonable, and adequate.  (Doc. 13 at 16–17.)  Specifically, the Court noted that the FLSA

22  claim was added to the suit for the purpose of removing the case to federal court after the parties

23  had agreed on terms of the settlement.  (*Id*. at 17.)  The Court noted the FLSA claim was not

24  mentioned in the motion for preliminary approval, and no value was assigned to the FLSA claim,

25  separate and apart from the other alleged claims in the complaint.  (*Id*. at 17.)

26

27  [1]  Initial analysis of the request for preliminary settlement approval was conducted by the honorable Magistrate Judge Sheila K. Oberto.  Plaintiffs did not object to the findings & recommendations of Magistrate Judge Oberto

28  before the deadline to do so, and the findings were subsequently reviewed and adopted by this Court.  (Docs. 13, 16.)

1    The Court ultimately concluded that Plaintiffs had not sufficiently justified conditional

2    class certification under Rule 23(a) and (b)(3) or preliminary approval of the proposed

3    settlement.  Plaintiffs subsequently renewed their motion for preliminary approval of the

4    settlement by submitting a brief "address[ing] the issues raised by the Court."  (Docs. 28; 28-1 at

5    7.)

6                          **THE PROPOSED SETTLEMENT**

7          Aside from a reduction of class representative service payments and removal of the

8    "clear sailing" provision, the proposed settlement has not been amended since this Court's prior

9    rejection of it.  (*See* Doc. 28-2 at 70–73.)  According to the proposed settlement, the class would

10   include approximately 412 individuals "who are or previously were employed by Defendant who

11   worked in California, who were classified as non-exempt, and who separated from their employment

12   between March 6, 2014 and February 20, 2018" (the "Settlement Class").  The PAGA period is

13   defined as March 6, 2017 to April 20, 2019, and "[a]ny aggrieved employees under PAGA who are

14   not in the Class will still be mailed their share of the PAGA Payment along with an explanatory

15   letter." (Doc. 28-2 at 2 n.1.)

16   **A.     Payment Terms**

17         Under the proposed settlement, Defendant agrees to pay a settlement amount of $425,000

18   consisting of:

19      •   Class representative service payments of $5,000 to each named Plaintiff;

20      •   Attorney's fees of up to $106,250, to be paid to class counsel, plus no more than

21          $12,000 for "expenses incurred as documented in Class Counsel's billing records;"

22      •   Estimated settlement administration costs of $15,000 or less to be paid to the

23          settlement administrator;

24      •   $37,500 to the Labor and Workforce Development Agency ("LWDA") pursuant to

25          California Labor Code § 2699(i);

26      •   PAGA payments to aggrieved employees totaling approximately $12,500 on a pro

27          rata basis based upon their workweeks, distributed "irrespective of whether the

28          Aggrieved Employee opts out from the class"; and

4

1          • The remaining net settlement amount to be distributed to the participating class

2              members.

3      (Doc. 28-2 at 28–29, 70–73.)  The net settlement amount will be distributed to class members

4      based on the number of weeks worked for each class member divided by the total weeks worked

5      by all class members during the class period.  (Doc. 28-2 at 29.)

6          The Proposed Settlement provides that the settlement amount is non-reversionary: if any

7      checks remain uncashed after 180 days, those amounts will be deposited "with the Unclaimed

8      Property fund maintained by the Controller for the State of California."  (Doc. 28-2 at 39.)

9      **B.      Releases**

10         The Proposed Settlement also provides that upon entry of final judgment, Plaintiffs and

11     participating class members will release "all claims alleged in the operative complaint" or "which

12     could have been alleged based on the asserted facts" during the class period.  (Doc. 28-2 at 39, ¶

13     F(1).)  Specifically, the releases for all class members provide:

14              **Participating Class Members.** Upon entry of final judgment, Plaintiffs
               and the Participating Class Members shall release all claims alleged in
15             the operative complaint (including any amended complaint filed prior to
               Final Approval) or which could have been alleged based on the asserted
16             facts regardless of whether such claims arise under federal, state and/or
               local law, statute, ordinance, regulation, common law, or other source of
17             law, which occurred during the Class Period, and a release from the State
               of California of all PAGA claims based on the Labor Code violations
18             alleged in the operative complaint which occurred during the time period
               of March 6, 2017 to April 20, 2019 ("Released Claims"). The Released
19             Claims shall specifically include all claims under the laws alleged in the
               operative complaint, as well as any and all claims, causes of action,
20             damages, wages, premiums, penalties, attorneys' fees, costs, and any
               other form of relief or remedy in law, equity, of whatever kind or nature
21             and for any relief whatsoever, including monetary, injunctive, or
               declaratory relief, whether direct or indirect, whether under federal law or
22             the law of any state, whether suspected or unsuspected, whether known
               or unknown, which the Plaintiffs or any Participating Class Member has
23             against the Released Parties or any of them for any acts occurring during
               the Class Period that were pled or could have been pled in the Action
24             based on the facts, subject matter or the factual or legal allegations in the
               Action including claims that are based upon or arise out of the California
25             Labor Code or any similar provision of federal, state or local law. These
               Released Claims exclude claims of wrongful termination, unemployment
26             insurance, social security, disability, and workers' compensation, and
               class claims outside of the Class Period and PAGA claims outside of the
27             time period of March 6, 2017 to April 20, 2019.

28         The release for Conti and Mora encompasses more claims than those identified for

                                         5

Settlement Class Members, because they agreed to release any claims known and unknown

against Defendant, not just those claims constrained to the facts alleged in this lawsuit.

Specifically, Conti and Mora's release provides:

> **Plaintiffs**. As of the date the Settlement becomes Final, Plaintiffs hereby fully and finally releases Defendant and the other Released Parties from any and all claims, demands, rights, liabilities and causes of action of every nature and description whatsoever, known or unknown, asserted or that might have been asserted, whether in tort, contract, or for violation of any local, state, or federal statute, rule, regulation, ordinance or common law including but not limited to those claims raised in the Action and/or that could have been raised in the Action, those arising from or related to their employment with Defendant or the termination thereof during the Class Period, and any other claims of any nature or origin whatsoever ("Plaintiffs' Released Claims"). This release excludes only the release of claims not permitted by law.
>
> **Plaintiffs' Waiver of Rights Under California Civil Code Section 1542.** As partial consideration for the Class Representative Service Payments, the Plaintiffs' Released Claims shall include all such claims, whether known or unknown by the releasing party. Thus, even if Plaintiffs discover facts and/or claims in addition to or different from those that they now know or believe to be true with respect to the subject matter of the Plaintiffs' Released Claims, those claims will remain released and forever barred. Therefore, with respect to Plaintiffs' Released Claims, Plaintiffs expressly waive and relinquishes the provisions, rights and benefits of section 1542 of the California Civil Code, which reads:
>
> <u>**A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release, and that if known by him or her would have materially affected his or her settlement with the debtor or released party.**</u>

(Doc. 28-2 at 40.)

The proposed notice explicitly advises class members that the "**release specifically includes claims under the federal Fair Labor Standards Act based on the facts or theories raised in this lawsuit. If you do not exclude yourself from this settlement, you will have waived those claims**." (Doc. 28-2 at 52.)

**C.     Objections and Opt-Out Procedure**

Any class member who wishes may file objections or elect not to participate in the Settlement. (Doc. 28-2 at 34, 35.) The proposed notice for class members explains the procedures to object to the terms request exclusion from the Settlement Class. (*Id.* at 51, 53.) Any class member who does not opt out will automatically be mailed a check for their share of

1    the settlement.  (Doc. 28-2 at 51.)

2                    **PRELIMINARY APPROVAL OF A CLASS SETTLEMENT**

3            When parties settle the action prior to class certification, the Court has an obligation to

4    "peruse the proposed compromise to ratify both the propriety of the certification and the fairness

5    of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).  Preliminary

6    approval of a class settlement is generally a two-step process.  First, the Court must assess

7    whether a class exists. *Id.* (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)).

8    Second, the Court must "determine whether the proposed settlement is fundamentally fair,

9    adequate, and reasonable." *Id.* (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir.

10   1998)).  The decision to approve or reject a settlement is within the Court's discretion. *Hanlon*,

11   150 F.3d at 1026.

12   **A.     Conditional Certification of a Settlement Class**

13          Class certification is governed by Rule 23 of the Federal Rules of Civil Procedure, which

14   provides that "[o]ne or more members of a class may sue or be sued as representative parties on

15   behalf of all." Fed. R. Civ. P. 23(a).  Conti and Mora seek to certify a class conditionally for

16   settlement purposes pursuant to Fed. R. Civ. P. 23.  (Docs. 9-1 at 21; 28-1 at 25.)  Parties

17   seeking class certification bear the burden of demonstrating the elements of Rule 23(a) are

18   satisfied, and "must affirmatively demonstrate … compliance with the Rule." *Wal-Mart Stores,*

19   *Inc. v. Dukes*, 564 U.S. 338, 350 (2011); *Doninger v. Pacific Northwest Bell, Inc.*, 563 F.2d

20   1304, 1308 (9th Cir. 1977).  If an action meets the prerequisites of Rule 23(a), the Court must

21   consider whether the class is maintainable under one or more of the three alternatives identified

22   in Rule 23(b). *Narouz v. Charter Communs., LLC*, 591 F.3d 1261, 1266 (9th Cir. 2010).

23          1.      Rule 23(a) Requirements

24          The prerequisites of Rule 23(a) "effectively limit the class claims to those fairly

25   encompassed by the named plaintiff's claims." *General Telephone Co. of the Southwest. v.*

26   *Falcon*, 457 U.S. 147, 155-56 (1982).  Certification of a class is proper if:

27                   (1) the class is so numerous that joinder of all members is
                     impracticable; (2) there are questions of law or fact common to the
28                   class; (3) the claims or defenses of the representative parties are typical

                                                    7

1    of the claims or defenses of the class; and (4) the representative parties
     will fairly and adequately protect the interests of the class.
2

3    Fed. R. Civ. P. 23(a).  These prerequisites are generally referred to as numerosity, commonality,

4    typicality, and adequacy of representation.  *Falcon*, 457 U.S. at 156.

5                    a.      *Numerosity*

6         This prerequisite requires the Court to consider "specific facts of each case and imposes

7    no absolute limitations."  *General Telephone Co. v. EEOC*, 446 U.S. 318, 330 (1980).  Although

8    there is not a specific threshold, joining more than one hundred plaintiffs is impracticable.  *See*

9    *Immigrant Assistance Project of Los Angeles Cnt. Fed'n of Labor v. INS*, 306 F.3d 842, 869 (9th

10   Cir. 2002) (finding the numerosity requirement … "satisfied solely on the basis of the number of

11   ascertained class members"); *see also Gay v. Waiters' & Dairy Lunchmen's Union*, 549 F.2d

12   1330, 1332 n.7 (9th Cir. 1977) (a proposed class with 110 members "clearly [included] a

13   sufficient number to meet the numerosity requirements").

14        Conti and Mora report that there are approximately 412 class members.  (Doc. 28-1 at 26.)

15   Therefore, joinder of all identified class members as plaintiffs is impracticable, and the

16   numerosity requirement is satisfied.

17                   b.      *Commonality*

18        Rule 23(a) requires "questions of law or fact common to the class."  Fed. R. Civ. P.

19   23(a)(2).  To satisfy the commonality requirement, the plaintiff must demonstrate common points

20   of facts and law.  *See Wal-Mart Stores*, 564 U.S. at 350.  Thus, "commonality requires that the

21   class members' claims depend upon a common contention such that determination of its truth or

22   falsity will resolve an issue that is central to the validity of each claim in one stroke," and the

23   "plaintiff must demonstrate the capacity of classwide proceedings to generate common answers to

24   common questions of law or fact that are apt to drive the resolution of the litigation."  *Mazza v.*

25   *Am. Honda Motor Co.*, 666 F.3d 581, 588 (9th Cir. 2012) (internal quotation marks, citations

26   omitted).  In an employment context, this inquiry is satisfied when the entire class was injured by

27   the same system-wide policy or practice.  *See Goodwin v. Winn Management Group LLC*, 2017

28   WL 3173006, at * 5 (E.D. Cal. 2017).

Plaintiffs asserts the commonality requirement is satisfied because there are common questions regarding "whether Defendant's security check practices were lawful, whether Defendant failed to properly pay wages for time worked during security checks, whether Defendant failed to properly provide meal and rest periods as a result of on premise duties, whether Defendant's conduct was willful, and whether the Class is entitled to compensation and related penalties." (Doc. 28-1 at 27.)  Plaintiffs assert that employees were subject to common policies and practices concerning security checks and meal and rest periods.  (Docs. 28-1 at 7; 28-3 at ¶¶ 3–4; 28-4 at ¶¶ 3–4.)

In rejecting the prior motion for preliminary settlement, the Court expressed concern that Plaintiffs merely made a "bare assertion" that Defendant engaged in a uniform practice without even "submit[ting] their own declarations to provide evidence of how the practices were applied to them." (Doc. 13 at 10; *see also* Doc. 16 at 2.)  Plaintiffs' renewed motion provides more. Specifically, Plaintiffs' declarations provide that, per Defendant's policies, non-exempt employees could not clock in or out until they "ma[de] a phone call at the sales counter" and underwent a "loss prevention inspection while not clocked in that took an average of approximately 15 minutes." (Docs. 28-3 at ¶¶ 4–5; 28-4 at ¶¶ 4–5.)  Plaintiffs additionally provide the Court with "Vendor Guidelines," which Plaintiffs describe as "uniformly impos[ing] on premise duties and required security checks." (Docs. 28-1 at 27; 28-2 at 83–88.)  Plaintiffs and Class Members were subject to these vendor guidelines while they worked as vendors at L'Oreal makeup counters operated inside Macy's stores.  (Doc. 39 at ¶ 3.) [2]

Because it appears resolution of the issues—including whether Defendant's policies violated California wage and hour law—would apply to the claims of each of the Class Members, the Court finds the commonality requirement is satisfied.

        c.   *Typicality*

This requirement demands that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).  A claim or defense is not

---

[2] These guidelines were in effect during the Class Period for this settlement, but L'Oreal has since ceased operating as a vendor inside Macy's stores. (Doc. 39 at ¶ 4.)

required to be identical, but rather "reasonably coextensive" with those of the absent class members. *Hanlon*, 150 F.3d at 1020. "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (internal quotation marks, citation omitted); *see also Kayes v. Pac. Lumber Co.*, 51 F.3d 1449, 1463 (9th Cir. 1995) (the typicality requirement is satisfied when named plaintiffs have the same claims as other members of the class and would not be subject to unique defenses).

Plaintiffs assert that typicality is met because "Plaintiffs, like every other member of the Class, [were] employed by Defendant as a non-exempt employee during the class period" and "subject to the same employment practices concerning security checks, meal and rest periods. (Doc. 28-1, citing Docs. 28-3 and 28-4 at ¶¶ 2, 5.) Because Plaintiffs were subjected to the same company policies and wage payment procedures as the Settlement Class Members, the Court finds the typicality requirement is satisfied for purposes of settlement. *See Hanon*, 976 F.2d at 508; *Kayes*, 51 F.3d at 1463.

d.     *Adequacy of Representation*

Absentee class members must be adequately represented for judgment to be binding upon them. *Hansberry v. Lee*, 311 U.S. 32, 42-43 (1940). This prerequisite is satisfied if the representative party "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "[R]esolution of this issue requires that two questions be addressed: (a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000) (citing *Hanlon*, 150 F.3d at 1020).

Conti and Mora seek appointment as the Class Representatives. According to Plaintiffs' memorandum, Defendant "disputes that Plaintiffs are adequate" representatives but "does not oppose a finding that Plaintiffs are adequate to represent the Class for settlement purposes only." (Doc. 28-1 at 29.) Conti and Mora assert that there is "no antagonism between the interests of Plaintiffs and those of the Class" because "Plaintiffs and the Class Members seek monetary relief

1  under the same set of facts and legal theories." (Doc. 28-1 at 29.)  Plaintiffs further assert that

2  they have "actively participated in the prosecution of this case to date" by "effectively

3  communicat[ing] with counsel, provid[ing] documents to counsel and participat[ing] extensively

4  in discovery, investigation and negotiations". (*Id*.)  Neither party identified conflicts between

5  Conti and Mora and the Settlement class members. (*Id*.)  Thus, the Court finds that Conti and

6  Mora will fairly and adequately represent the interests of the Settlement Class.

7       The law firm of Blumenthal Nordrehaug Bhowmik De Blouw LLP seeks appointment as

8  counsel for the Settlement Class.  Counsel reports that it has "extensive experience in class action

9  litigation in California, and in particular, wage and hour litigation."  Counsel asserts that it has

10  "been involved as class counsel in hundreds of wage and hour actions." (Doc. 28-2 at 16–17.)

11  Defendant makes no objection to the Blumenthal Nordrehaug's appointment for purposes of

12  settlement.  Therefore, the Court finds that Blumenthal Nordrehaug Bhowmik De Blouw LLP

13  meets the adequacy requirement.

14       2.    Certification of a Class under Rule 23(b)(3)

15       As noted above, once the requirements of Rule 23(a) are satisfied, a class may only be

16  certified if it is maintainable under Rule 23(b).  Fed. R. Civ. P. 23(b); *see also Narouz*, 591 F.3d

17  at 1266.  Plaintiffs assert that certification of the settlement class is appropriate under Rule

18  23(b)(3), which requires a finding that (1) "the questions of law or fact common to class members

19  predominate over any questions affecting only individual members," and (2) "a class action is

20  superior to other available methods for fairly and efficiently adjudicating the controversy." (Doc.

21  28-1 at 29–31.)

22       Conti and Mora argue that the predominance requirement is satisfied because "the

23  adjudication of the common issues as to Defendant's uniform and systematic employment

24  policies applicable to non-exempt employees during the Class Period could establish Defendant's

25  liability on a class-wide basis." (*Id*. at 30.)  Defendant disputes that the predominance

26  requirement may be satisfied but does not oppose such a finding for the purposes of settlement.

27  (*Id*.)

28       Conti and Mora also contend that certification of the Settlement Class is a superior method

1   of adjudicating the issues because the "damages suffered by each Class Member are not large"

2   and Settlement would end "risky, protracted and expensive litigation with significant payments to

3   class members who would not bring their individual claims because they fear potential retaliation

4   and repercussions with future employment." (*Id.*, citing *Campbell v. PricewaterhouseCoopers,*

5   *LLP*, 253 F.R.D. 586, 605 (E.D. Cal. 2008).) Furthermore, no issues of manageability have been

6   identified that would preclude certification. Therefore, the Court finds conditional certification of

7   the proposed Settlement Class is proper under Rule 23(b)(3).

8   **B.      Evaluation of the Settlement Terms**

9          Settlement of a class action requires approval of the Court, which may be granted "only

10  after a hearing and on finding that [the settlement] is fair, reasonable, and adequate." Fed. R. Civ.

11  P. 23(e)(2). Approval is required to ensure settlement is consistent with the plaintiff's fiduciary

12  obligations to the class. *See Ficalora v. Lockheed Cal. Co.*, 751 F.2d 995, 996 (9th Cir. 1985).

13  Toward that end, "Congress and the Supreme Court amended Rule 23(e) to set forth specific

14  factors to consider in determining whether a settlement is 'fair, reasonable, and adequate.'"

15  *Briseño v. Henderson*, 998 F.3d 1014, 1023 (9th Cir. 2021); *see* Fed. R. Civ. P. 23(e)(2) (effective

16  Dec. 1, 2018). Rule 23(e)(2) now directs the Court to consider whether:

17              (A) the class representatives and class counsel have adequately
                represented the class;
18              (B) the proposal was negotiated at arm's length;
                (C) the relief provided for the class is adequate, taking into account:
19                  (i) the costs, risks, and delay of trial and appeal;
                    (ii) the effectiveness of any proposed method of distributing
20                  relief to the class, including the method of processing class-
                    member claims;
21                  (iii) the terms of any proposed award of attorney's fees,
                    including timing of payment; and
22                  (iv) any agreement required to be identified under Rule
                    23(e)(3); and
23              (D) the proposal treats class members equitably relative to each
                    other.
24

25  Fed. R. Civ. P. 23(e)(2); *see also Briseño*, 998 F.3d at 1023–24. The Ninth Circuit determined

26  this revision to Rule 23 requires courts "to go beyond [its] precedent." *Briseño*, 998 F.3d at

27  1026.[3]

28
    _____
    [3] Previously, the Ninth Circuit had identified several factors to determine whether a settlement agreement meets

1      1.      Representation of the Class

2          To determine adequacy of representation under Rule 23(e)(2), the Court may consider

3   whether the interests of the named plaintiff are "aligned with the interests of the Class

4   Members." *See Cottle v. Plaid Inc.*, 240 F.R.D. 356, 376 (N.D. Cal. 2021).  In addition, a

5   finding that "Class Counsel are experienced and competent" supports a conclusion that the class

6   is adequately represented.  *Id.*; *see also In re Pac. Enters. Sec. Litig.,* 47 F.3d 373, 378 (9th Cir.

7   1995) ("Parties represented by competent counsel are better positioned than courts to produce a

8   settlement that fairly reflects each party's expected outcome in litigation.").  Thus, the adequacy

9   analysis under Rule 23(e)(2) is "redundant of the requirements of Rule 23(a)(4) and Rule 23(g),

10  respectively."  *Moreno v. Beacon Roofing Supply, Inc.*, 2020 WL 1139672 *at 5 (S.D. Cal. Mar.

11  9, 2020).

12         Conti and Mora's interests align with those of the Class because "Plaintiffs and the Class

13  Members seek monetary relief under the same set of facts and legal theories."  (Doc. 28-1 at 29.)

14  In addition, Class Counsel are clearly experienced in class action litigation.  (Doc. 28-2 at 16–

15  17.)  Because Plaintiffs carried the burden to show the adequacy prerequisite was satisfied under

16  Rule 23(a), the Court finds the requirement under Rule 23(e)(2) is also satisfied.  *See Moreno*,

17  2020 WL 1139672 *at 5 ("Because the Court found that adequacy under Rule 23(a)(4) has been

18  satisfied above, due to the similarity, the adequacy factor under Rule 23(e)(2)(A) is also met.").

19      2.      Negotiation of the Settlement

20         Under Rule 23, the Court must consider whether "the proposal was negotiated at arm's

21  length."  Fed. R. Civ. P. 23(e)(2)(B).  The Ninth Circuit also "put[s] a good deal of stock in the

22  product of an arms-length, non-collusive, negotiated resolution" in evaluating a proposed class

23

24  _____

these standards, including:
       the strength of plaintiff's case; the risk, expense, complexity, and likely duration of further
25     litigation; the risk of maintaining class action status throughout the trial; the amount offered
       in settlement; the extent of discovery completed, and the stage of the proceedings; the
       experience and views of counsel; the presence of a governmental participant; and the
26     reaction of the class members to the proposed settlement.

27  *Staton*, 327 F.3d at 959 (citation omitted).  The Court focuses its analysis on the factors enumerated in Rule 23.  *See*
    *Briseño*, 998 F.3d at 1026; *see also Herrera v. Wells Fargo Bank, N.A.*, 2021 U.S. Dist. LEXIS 170195, at *21
28  (C.D. Cal. June 8, 2021) ("The goal of [amended Rule 23(e)] is … to focus the [district] court and the lawyers on
    the core concerns of procedure and substance that should guide the decision whether to approve the proposal")
    (quoting Fed. R. Civ. P. 23(e)(2), 2018 Advisory Committee Notes).

action settlement.  *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009).  The

inquiry of collusion addresses the possibility that the settlement agreement is the result of either

"overt misconduct by the negotiators" or improper incentives of class members at the expense of

others.  *Staton*, 327 F.3d at 960.  The Ninth Circuit observed that "settlement class actions

present unique due process concerns for absent class members" because the "inherent risk is that

class counsel may collude with the defendants, tacitly reducing the overall settlement in return

for a higher attorney's fee."  *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946

(9th Cir. 2011) (internal quotation marks, citations omitted).  Therefore, the Court must consider

whether the process by which the parties arrived at their settlement is truly the product of arm's

length bargaining or the product of collusion or fraud.  *Millan v. Cascade Water Servs., Inc.*, 310

F.R.D. 593, 613 (E.D. Cal. 2015).

In particular, where a class action settlement agreement is reached prior to a class being

certified, district courts must be watchful "not only for explicit collusion, but also for more

subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain

class members to infect the negotiations." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d

at 947; *see also Briseño*, 998 F.3d at 1023.  These "more subtle signs" include: (1) "when

counsel receive a disproportionate distribution of the settlement, or when the class receives no

monetary distribution but class counsel are amply rewarded"; (2) the existence of a "clear

sailing" arrangement, which provides "for the payment of attorneys' fees separate and apart from

class funds" and "carries the potential of enabling a defendant to pay class counsel excessive

fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class"; and

(3) "when the parties arrange for fees not awarded to revert to defendants rather than be added to

the class fund." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d. at 947 (internal

quotations, citations omitted).

a.   *Whether there is a disproportionate distribution to counsel*

The Settlement provides that Class Counsel may request attorneys' fees up to $106,250,

which is approximately 25% of the gross settlement fund.  (Doc. 28-2 at 28.)  The typical range of

acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement value,

1   with 25% considered the benchmark. *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000).

2   Because the fees requested are within the range awarded by the Ninth Circuit from the gross

3   settlement fund, the Court finds the Settlement Agreement does not provide a disproportionate

4   distribution to Class Counsel. *See Millan v. Casvade Water Servs.*, 310 F.R.D. 593, 612 (E.D.

5   Cal. 2015) (finding no disproportionate distribution where class counsel was to receive a third of

6   the settlement fund "although significantly above the benchmark for this Circuit," because it was

7   "not unreasonable as an upper bound" of fees awarded in the Circuit).

8                 b.     *Existence of a "clear sailing" provision*

9       In general, a "clear sailing" provision is one in which the parties agree to the "payment of

10  attorneys' fees separate and apart from class funds." *In re Bluetooth Headset Prods. Liab. Litig*.,

11  654 F.3d at 947. However, the Ninth Circuit also recognizes that a "clear sailing" arrangement

12  exists when a defendant expressly agrees not to oppose an award of attorneys' fees up to an

13  agreed upon amount. *In re Bluetooth Headset Prods.*, 654 F.3d at 947. Though the settlement

14  agreement here originally contained a clear sailing provision, the parties have removed it by

15  stipulation.  (Doc. 28-2 at 72.)  Consequently, this factor does not weigh against preliminary

16  approval of the settlement.

17               c.     *Whether there is a reversion to Defendant*

18       The parties did not agree that any unawarded fees to revert to Defendant.  Instead, the

19  parties acknowledge in the Settlement Agreement that the Gross Settlement Amount is "non-

20  reversionary," and fees shall be paid from the Gross Settlement Amount.  (Docs. 28-1 at 11; 28-2

21  at 25)

22              d.     *Findings on collusion*

23       Based upon the factors set forth by the Ninth Circuit, the Court finds the proposed

24  settlement "appears to be the product of serious, informed, non-collusive negotiations." *See In*

25  *re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079-80 (N.D. Cal. 2007).  Thus, this factor

26  under Rule 23 supports preliminary approval of the class settlement.

27         3.    <u>Relief Provided to the Class</u>

28       The Ninth Circuit observed "the very essence of a settlement is compromise, 'a yielding

of absolutes and an abandoning of highest hopes.'" *Officers for Justice v. Civil Serv. Commission*, 688 F.2d 615, 624 (9th Cir. 1982) (citation omitted).  When analyzing an agreement, the Court should examine "the complete package taken as a whole," and the proposed settlement is "not to be judged against a hypothetical or speculative measure of what *might* have been achieved by the negotiators." *Officers for Justice*, 688 F.2d at 625, 628.

The proposed gross settlement amount is $425,000.  (Doc. 28-2 at 25.)  After the anticipated deductions from the gross settlement, Plaintiffs estimate that each class member will receive an average net recovery of approximately $562, for a total of $230,720 for the class. Analyzing the factors identified in Rule 23, as discussed below, the Court finds the amount offered and relief provided to the Settlement Class supports preliminary approval of the Settlement.

   a.   *Costs, risks, and delays*

"A[] central concern [when evaluating a proposed class action settlement] … relate[s] to the cost and risk involved in pursuing a litigated outcome." *Feltz v. Cox Comm's Cal., LLC*, 2022 WL 2079144 at *9 (C.D. Cal. Mar. 2, 2022) (quoting Fed. R. Civ. P. 23(e), 2018 Advisory Committee Notes [modifications in original].)  Approval of settlement is "preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004).  If the settlement were to be rejected, the parties would have to engage in further litigation, including seeking class certification and discovery on the issue of damages.

Plaintiffs report that the action "is the result of extensive and hard fought negotiations" during which Class Counsel "conducted a thorough investigation into the facts of the class action, including a review of relevant documents and data and a diligent investigation of the Class Members' claims against Defendant." (Doc. 28-1 at 17–18.)  Plaintiffs acknowledge that there are risks related to their claims and recovery because "Defendant denies every one of the claims and contentions alleged" and "has asserted and continues to assert many defenses thereto" while "expressly den[ying] and continu[ing] to deny any wrongdoing or liability."  In the absence of approved settlement, the parties would likely face a protracted litigation course,

16

including a contested motion for certification, motions for summary judgment, and trial and appellate proceedings that would consume time and resources and present each of them with ongoing litigation risks and uncertainties." (*Id*. at 17, citing Doc. 28-2 at ¶ 20.)

The time and expense of continued litigation may well outweigh any additional recovery. Due to the acknowledged risk of the claims of class members, costs of future litigation that may reduce the recovery to class members, and delay in payments if the settlement is not approved, this factor weighs in favor of preliminary approval of the Settlement. *See Rodriguez*, 563 F.3d at 966 (risk, expense, complexity and duration of litigation supports settlement); *Curtis-Bauer v. Morgan Stanley & Co., Inc*., 2008 WL 4667090, at *4 (N.D. Cal. Oct. 22, 2008) ("Settlement avoids the complexity, delay, risk and expense of continuing with the litigation and will produce a prompt, certain, and substantial recovery for the Plaintiff class.").

### b.    *Proposed Distribution*

"[T]he goal of any distribution method is to get as much of the available damages remedy to class members as possible and in as simple and expedient a manner as possible." *Hilsley v. Ocean Spray Cranberries, Inc.*, 2020 WL 520616 at *7 (S.D. Cal. Jan. 31, 2020) (citing "Final approval criteria—Rule 23(e)(2)(C)(ii): Distribution method," 4 NEWBERG ON CLASS ACTIONS § 13:53 (5th ed.)). "Often it will be important for the court to scrutinize the method of claims processing to ensure that it facilitates filing legitimate claims." Fed. R. Civ. P. 23(e), 2018 Advisory Committee Notes. "A claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding." *Id*.

Class members are not required to take any action, such as submitting a claim form, to receive their settlement share. Rather, class members need only take specific action if they wish to opt-out of the settlement, object to any of the terms of the settlement, or dispute the amount of their individual settlement share. Because the class members are not required to submit a claim form, the proposed method of distribution will facilitate payment for legitimate claims and is not "unduly demanding" upon Settlement Class members. Thus, this factor weighs in favor of preliminary approval of the settlement. *See Jackson v. Fastenal Co.*, 2021 WL 5755583 at *11

17

(E.D. Cal. Dec. 3, 2021) (finding "the proposed method of distributing relief is effective, and weighs in favor of a finding that the settlement agreement is fair, reasonable and adequate" where the class members did not have to file a claim).

c.   *Attorneys' fees*

Under Rule 23, "courts must scrutinize 'the terms of any proposed award of attorney's fees.'" *McKinney-Drobnis v. Oreshack*, 16 F.14th 594, 607 (9th Cir. 2021) (quoting Fed. R. Civ. P. 23(e)(2)(C)(iii). The Ninth Circuit explained, "the new Rule 23(e) makes clear that courts must balance the 'proposed award of attorney's fees' vis-à-vis the 'relief provided for the class' in determining whether the settlement is 'adequate' for class members." *Id.*, quoting *Briseño*, 998 F.3d at 1024.

As discussed above, Class Counsel may request fees in the amount of one quarter of the settlement fund.  (Doc. 28-2 at 28.)  This payment will be made by the Settlement Administrator. (*Id*. at 72.)  Payments from the fund, including attorneys fees and payments to the class members, must be made within 21 days after funding by the Defendant.  (*Id*. at 38.)

The fees to which the parties have agreed is equal to the benchmark percentage for fees in the Ninth Circuit. *See Powers*, 229 F.3d at 1256.  Importantly, however, any party seeking fees bears the burden of establishing that the fees and costs were reasonably necessary to achieve the results obtained.  *See Fischer v. SJB-P.D., Inc.,* 214 F.3d 1115, 1119 (9th Cir. 2000). Therefore, a fee applicant **must provide time records documenting the tasks completed and the amount of time spent on the action**.  *Hensley v. Eckerhart*, 461 U.S. 424, 424 (1983); *Welch v. Metropolitan Life Ins. Co*., 480 F.3d 942, 945-46 (9th Cir. 2007).  Because the percentage of fees requested corresponds to the benchmark percentage identified by the Ninth Circuit, this amount is approved preliminarily.  The Court will evaluate the reasonableness of the fee request and the exact amount of the fee award upon application by Class Counsel with final approval of the settlement.

d.   *Agreement required to be identified*

The Court must consider any agreement that is required to be identified under Rule 23(e)(3). Fed. R. Civ. P. 23(e)(2)(C)(iv).  Specifically, "parties seeking approval must file a

statement identifying any agreement made in connection with the proposal." Fed. R. Civ. P. 23(e)(3).  Plaintiffs have represented that there are no such agreements requiring identification.  (Doc. 28-2 at ¶ 25.)  Therefore, this factor does not weigh against preliminary approval.

### 4. Treatment of Class Members

Rule 23 requires the Court to consider whether the proposed settlement "treats class members equitably relative to each other."  Fed. R. Civ. P. 23(e)(2)(D).  "A distribution of relief that favors some class members at the expense of others may be a red flag that class counsel have sold out some of the class members at the expense of others, or for their own benefit." *Hilsley*, 2020 WL 520616 at *7 (citation omitted).

Each class member's settlement share "will be determined based on the weeks worked by that individual."  (Doc. 28-1 at 21.)  Because the Settlement provides *pro rata* distribution to Class Members based upon the number of workweeks, the agreement treats the Class Members equitably, and the proposed distribution plan supports preliminary approval.  *See Cooks v. TNG GP*, 2021 WL 5139613 at *4 (E.D. Cal. Nov. 4, 2021) (observing that the calculation of payments to class members "on a pro-rata basis based on the number of compensable workweeks each member worked … is fair and treats class members equitably"); *see also Gomez-Gasca v. Future AG Mgmt. Inc.*, 2020 WL 6149688 at *4 (N.D. Cal. Oct. 20, 2020) (noting that in the preliminary approval stage, "the Court approved the proposed plan pro rata allocation based on the number of workweeks the class member performed work during the Class Period"); *In re Regulus Therapeutics Sec. Litig.*, 2020 WL 6381898 at *5 (S.D. Cal. Oct. 29, 2020) (finding a *pro rata* distribution plan was equitable and weighed in favor of approving the settlement terms).

### 5. Class Representative Service Payment

Incentive awards, service payments, for class representatives are not to be given routinely by the Court.  In *Staton*, 327 F.3d at 975, the Ninth Circuit explained:

> Indeed, '[i]f class representatives expect routinely to receive special awards in addition to their share of the recovery, they may be tempted to accept suboptimal settlements at the expense of the class members whose interests they are appointed to guard." *Weseley v. Spear, Leeds & Kellogg*, 711 F. Supp. 713, 720

19

1

2

3

(E.D.N.Y. 1989); *see also Women's Comm. for Equal Employment Opportunity v. Nat'l Broad. Co.*, 76 F.R.D. 173, 180 (S.D.N.Y. 1977) ("[W]hen representative plaintiffs make what amounts to a separate peace with defendants, grave problems of collusion are raised.").

4

5

6

7

8

9

In fact, "'excessive payments to named class members can be an indication that the agreement was reached through fraud or collusion.'" *Id.* (citation omitted). In evaluating the enhancement award to a class representative, a court should consider all "relevant factors including the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, … the amount of time and effort the plaintiff expended in pursuing the litigation … and reasonable fears of workplace retaliation." *Staton*, 327 F.3d at 977.

10

11

12

13

14

15

16

17

18

19

20

      The Settlement provides that Conti and Mora may apply "for approval of Class Representative Services Payments . . . not to exceed $5,000 each." (Doc. 28-2 at 4.) The Settlement Administrator will pay the approved amount out of the Gross Settlement fund. (Doc. 28-2 at 71.) "If the Court approves a Class Representative Service Payment of less than $5,000 to one or both of the Plaintiffs, the remainder will be retained In the Net Settlement Amount for distribution to Participating Class Members." (*Id.*) Conti and Mora assert that the service payment is in consideration of the considerable time and effort they have put into this lawsuit, as well as the risk that future employers may look negatively on the suit and Plaintiffs may ultimately be responsible for paying some or all of Defendant's legal costs. (Docs. 28-3 and 28-4 at ¶¶ 6–7.) Conti and Mora also note that the settlement agreement requires them to provide a "general release of all claims" they may have against Defendant. (*Id.* at ¶ 12.)

21

22

23

24

25

26

27

28

      Plaintiffs have provided sworn declarations describing their active representation in this case, including time spent with attorneys and gathering documents. (*See generally* Docs. 28-3 and 28-4 at ¶¶ 6–12.) Though neither Conti nor Mora provide an exact accounting of their efforts, they both estimate that they spent between 70 and 80 hours on this case. (Docs. 28-3 and 28-4 at ¶¶ 6–12.) Even still, it is not entirely clear at this stage which of Plaintiffs' effort were taken on *behalf of the class*, as opposed to the ordinary effort that would have been required if they had filed the action only on behalf of themselves. However, due to the flexibility for an award *up to* $5,000 each, the request for approval of a class representative service payment is

1   approved preliminarily.

2        6.   Views of Counsel

3        Kyle Nodrehaug, Class Counsel, asserts that the settlement is "fair, reasonable and

4   favorable to the Class."  (Doc. 28-2 at ¶ 3.)  The opinion of counsel is entitled to significant

5   weight, and support approval of the settlement agreement.  *See Nat'l Rural Telecomms.*, 221

6   F.R.D. at 528 ("Great weight is accorded to the recommendation of counsel, who are most

7   closely acquainted with the facts of the underlying litigation").

8        7.   Reaction of Class Members to the Proposed Settlement

9        Conti and Mora have agreed to the terms of the Settlement Agreement.  (Docs. 28-3 and

10  28-4 at ¶ 17.)  However, because Class Members have not yet received notice, this factor shall

11  be revisited with final approval of the Settlement.  *See Cottle*, 340 F.R.D. at 376 ("The reaction

12  of the class members is best assessed at the final approval hearing since the court can look at

13  how many class members submitted … objections").

## APPROVAL OF PAGA SETTLEMENT

15       California adopted the Private Attorney General Act to allow individual plaintiffs "to

16  bring a civil action to collect civil penalties for Labor Code violations previously only available

17  in enforcement actions initiated by the State's labor law enforcement agencies." *Caliber*

18  *Bodyworks, Inc. v. Superior Court*, 134 Cal. App. 4th 365, 374 (2005); *see also* Cal. Lab. Code §

19  2699(a); *Urbino v. Orkin Servs. of Cal., Inc.*, 726 F.3d 1118, 1121 (9th Cir. 2013).  Thus, a

20  PAGA plaintiff now acts "as the proxy or agent of the state's labor law enforcement agencies."

21  *Arias v. Superior Court*, 46 Cal. 4th 969, 986 (2009).

22       Pursuant to PAGA, an "aggrieved employee" may bring an action for civil penalties for

23  labor code violations on behalf of himself and other current or former employees.  Cal. Lab.

24  Code § 2699(a).  PAGA defines an "aggrieved employee" as "any person who was employed by

25  the alleged violator and against whom one or more of the alleged violations was committed." *Id*.

26  A judgment in a PAGA action "binds all those, including nonparty aggrieved employees, who

27  would be bound by a judgment in an action brought by the government." *Arias*, 46 Cal. 4th at

28  986.

1    To bring an action under PAGA, an aggrieved employee must first provide written notice

2    to the employer and the Labor and Work Force Development Agency.  Cal. Lab. Code §

3    2699.3(a)(1).  Recovery under PAGA is limited to civil penalties, and the civil penalties must be

4    allocated with 75% directed to the LWDA and 25% to aggrieved employees.  *Id.* § 2699(i).  Any

5    proposed settlement of PAGA claims must be submitted to the LWDA, and a trial court must

6    "review and approve" any settlement of PAGA claims. *Id.* § 2699(l)(2); *see also Haralson v. U.S.*

7    *Aviation Servs. Corp.*, 383 F. Supp. 3d 959, 971 (N.D. Cal. 2019) (because settling a PAGA

8    claim "compromises a claim that could otherwise be brought be the state," it requires that a court

9    "review and approve any settlement of any civil action pursuant to [PAGA]") (citation omitted).

10    Although there is no binding authority establishing the standard of review for PAGA

11    settlements, California district courts "have applied a Rule 23-like standard, asking whether the

12    settlement of the PAGA claims is 'fundamentally fair, adequate, and reasonable in light of

13    PAGA's policies and purposes.'" *Haralson*, 383 F. Supp. 3d at 972.  This standard is derived

14    principally from the LWDA itself.  *See O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110,

15    1133 (N.D. Cal. 2016).  The LWDA indicated:

16    It is thus important that when a PAGA claim is settled, the relief
      provided for under the PAGA be genuine and meaningful,
17    consistent with the underlying purpose of the statute to benefit the
      public and, in the context of a class action, the court evaluate
18    whether the settlement meets the standards of being "fundamentally
      fair, reasonable, and adequate" with reference to the public policies
19    underlying the PAGA.

20    *Id.* (citation omitted).  When a proposed settlement involves overlapping class action and PAGA

21    claims, courts may employ a "sliding scale" in determining if the proposed settlement is

22    "fundamentally fair, reasonable, and adequate with reference to the public policies underlying

23    the PAGA." *O'Connor*, 201 F. Supp. 3d at 1134; *see also Haralson*, 383 F. Supp. 3d at 972

24    (following *O'Connor*); *Cooks v. TNG GP*, 2020 WL 5535397 at *9-10 (E.D. Cal. Sept. 15,

25    2020) (same).  "[W]here the settlement for the rule 23 class is robust, the purposes of PAGA

26    may be concurrently fulfilled."  *Cooks*, 2020 WL 5535397 at *10 (quoting *O'Connor*, 201 F.

27    Supp. 3d at 1134).

28    After reviewing both the original and renewed motions for preliminary approval,

22

1   including all supporting documents, the Court is unable to find confirmation that Class Counsel

2   has submitted or plans to submit the revised class and PAGA settlement to the LWDA as

3   required by the Labor Code.  However, the settlement of $425,000.00 appears sufficiently robust

4   such that the Court finds the purposes of PAGA to address the alleged labor violations are

5   fulfilled by the proposed agreement.  The Settlement properly designates 75% of the PAGA

6   funds—in the amount of $10,000 from the Gross Settlement Amount— to the LWDA and 25%

7   to aggrieved employees.  (Doc. 28-2 at 25.)  Accordingly, the Court finds approval of the PAGA

8   payment is also appropriate, conditional on confirmation that the PAGA settlement has been

9   properly submitted to the LWDA.  *See Jamil v. Workforce Resources*, 2020 WL 6544660 at *6

10  (S.D. Cal. Nov. 5, 2020) (finding a $10,000 PAGA award was fair and adequate as part of a

11  class settlement).

**APPOINTMENT OF SETTLEMENT ADMINISTRATOR**

12

13          The Parties have agreed upon and propose that the Court appoint ILYM Group will be

14  appointed as a Settlement Administrator.  (Doc. 28-2 at 30.)  Under the terms of the proposed

15  Settlement:

16          No later than 30 calendar days after the District Court enters its
        order granting Preliminary Approval of the Settlement, Defendant
17      will provide to the Settlement Administrator an Excel file with the
        Class Data. If any or all of the Class Data is unavailable to
18      Defendant, Defendant will so inform Class Counsel and the Settling
        Parties will make their best efforts to reconstruct or otherwise agree
19      upon the Class Data prior to when it must be submitted to the
        Settlement Administrator. The Class Data, it contents and any files
20      containing Class Data shall remain strictly confidential for the
        Settlement Administrator's eyes only, and shall not to be disclosed
21      to Plaintiffs or to Class Counsel. The Settlement Administrator shall
        agree to keep the Class Data and its contents strictly confidential.
22

23          Using best efforts to mail it as soon as possible, and in no event later
        than 21 days after receiving the Class Data, the Settlement
24      Administrator will mail the Class Notice Packets to all Class
        Members via first-class regular U.S. Mail using the mailing address
25      information provided by Defendant, unless modified by any updated
        address information that the Settlement Administrator obtains in the
26      course of administration of the Settlement.

27          If a Class Notice Packet is returned because of an incorrect address,
        the Settlement Administrator will promptly, and not longer than ten
28      (10) days from receipt of the returned packet, search for a more
        current address using standard skip-tracing for the Class Member

1

2

3

4

5

6

7

> and re-mail the Class Notice Packet to the Class Member. The Settlement Administrator will use the Class Data and otherwise work with Defendant to find that more current address. The Settlement Administrator will be responsible for taking reasonable steps, consistent with its agreed-upon job parameters, Court orders, and fee, as agreed to with Class Counsel and according to the following deadlines, to trace the mailing address of any Class Member for whom a Class Notice Packet is returned by the U.S. Postal Service as undeliverable. The Settlement Administrator will note for its own records and notify Class Counsel and Defendant's Counsel of the date and address of each such re-mailing as part of a weekly status report provided to the Settling Parties.

(Doc. 28-2 at 32–33.)  In anticipation of the administration expenses related to these tasks,

8

$15,000.00 from the gross settlement fund has been designated for the Settlement Administrator.

9

(*Id.* at 29).

10

Based upon the recommendation and request of the parties, ILYM Group is appointed as

11

the Settlement Administrator.

12

**APPROVAL OF CLASS NOTICE**

13

The class notice must satisfy the requirements of the Federal Rules of Civil Procedure,

14

which provides the notice "must clearly and concisely state in plain, easily understood language"

15

the following information:

16

17

18

19

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

20

21

Fed. R. Civ. P. 23(c)(2)(B).  A class notice must be "reasonably calculated, under all

22

circumstances, to apprise interested parties of the pendency of the action and afford them an

23

opportunity to present their objections." *See Mullane v. Cent. Hanover Bank & Trust Co.*, 339

24

U.S. 306, 314 (1950).

25

**A.     Content of the Notice**

26

Plaintiffs have submitted the proposed Notice Packet.  (Doc. 28-2 at 49.)  The Notice

27

Packet provides information regarding the background of the action and claims asserted by Conti

28

and Mora that have resolved as a result of this settlement.  (*Id.* at 49–50.)  The Notice also

1    explains the terms and provisions of the Settlement, including payments from the gross

2    settlement fund, and how payments will be received.  (*See id.* at 50–51.)  The Notice Packet will

3    provide an estimate of the Class Member's share and explains the effect of the judgment and

4    settlement, including the claims released.  (*Id.* at 51–52.)  Finally, the Notice explains the right to

5    object to the Settlement or request exclusion, and it will include the applicable deadlines.  (*Id.* at

6    53–54.)  Consequently, the Court finds the content of the Notice Packet is adequate.

7    **B.      Method and Administration of Notice Packet**

8            Within 30 days of the date of this Order, "Defendant will provide to the Settlement

9    Administrator an Excel file with the Class Data."  (Doc. 28-2 at 32.)  "Class Data" includes:

10                   (1) for each Class Member, his or her name; last-known mailing
              address; Social Security number; Defendant's employee
11            identification number; the dates of employment as a member of the
              Class; and the number of workweeks that he or she worked for
12            Defendant during the Class Period as a Class Member, and (2) for
              each Aggrieved Employee, his or her name; last known mailing
13            address; Social Security number; Defendant's employee
              identification number; the dates of employment as an Aggrieved
14            Employee; the number of workweeks that he or she worked as an
              Aggrieved Employee.
15

16    If any or all Class Data is unavailable to Defendant, "Defendant will so inform Class Counsel and

17    the Settling Parties will make their best efforts to reconstruct or otherwise agree upon the Class

18    Data prior to when it must be submitted to the Settlement Administrator."  (Doc. 28-2 at 32.)

19            Within 21 days of receiving the Class Data, the Settlement Administrator will mail the

20    Class Notice Packets to all Class Members "via first-class regular U.S. Mail using the mailing

21    address information provided by Defendant, unless modified by any updated address information

22    that the Settlement Administrator obtains in the course of administration of the Settlement."

23    (Doc. 28-2 at 33.)

24            If a Class Notice Packet is returned due to an incorrect address, the Settlement

25    Administrator will promptly, and not longer than ten days from receipt of the returned packet:

26                   search for a more current address using standard skip-tracing for the
              Class Member and re-mail the Class Notice Packet to the Class
27            Member. The Settlement Administrator will use the Class Data and
              otherwise work with Defendant to find that more current address.
28            The Settlement Administrator will be responsible for taking

                                            25

> reasonable steps, consistent with its agreed-upon job parameters, Court orders, and fee, as agreed to with Class Counsel and according to the following deadlines, to trace the mailing address of any Class Member for whom a Class Notice Packet is returned by the U.S. Postal Service as undeliverable. The Settlement Administrator will note for its own records and notify Class Counsel and Defendant's Counsel of the date and address of each such re-mailing as part of a weekly status report provided to the Settling Parties."

(*Id.*)

Class Members wishing to exclude themselves from the Settlement have 45 days to mail the Settlement Administrator a written, signed, and dated request to opt out. The request must be sent via First Class Mail. (Doc. 28-2 at 53.) The request to opt out must state that "I have read the Class Notice and I wish to opt-out of the class action and settlement of the case *Conti v. L'Oreal USA S/D, Inc.,* Case No. 1:19-cv-00769." It must contain the name, address, and signature of the class member opting out. (Doc. 28-2 at 53.)

Similarly, Class Members wishing to object to the settlement terms "can ask the Court to deny approval by filing a written objection or appearing at the hearing to make an oral objection" by mailing an objection to the Settlement Administrator and the settling parties' counsel within 45 days after the Settlement Administrator mails the Class Notice Packets. (Doc. 28-2 at 34, 53.) Objections must be in writing and include the objecting Class Member's name, current address, telephone number, and a description of why the Settlement is not fair and reasonable. It must also explain whether the objecting Class Member intends to appear at the final approval hearing. Finally, objections must state the name and number of the case. Objecting Class Members may enter an appearance through an attorney if they desire. (Doc. 28-2 at 53.)

No later than ten days before the date by which Plaintiffs file their motion for final approval of the Settlement, the Settlement Administrator shall serve the parties with "a declaration of due diligence setting forth its compliance with its obligations under th[e] Agreement and detailing the Elections Not to Participate in the Settlement" that it received. (Doc. 28-2 at 33.)

**C.      Required Revisions to the Notice Packet**

26

The Notice Packet must be modified to include information in this Order, including the date and location of the hearing for Final Approval of Class Settlement.  In addition, the Notice Packet must include the contact information, including address and telephone and fax numbers, for the Settlement Administrator.

If Plaintiffs intend to issue a Spanish language translation of the Notice, they are informed that this Court requires a declaration that the Notice was translated by a certified court interpreter, asserting the translation is an accurate translation of the Court-approved English version of the Notice.

## CONCLUSION AND ORDER

Based upon the foregoing and conditioned upon the below, the Court finds the proposed class settlement is fair, adequate, and reasonable.  The factors set forth under Rule 23 and Ninth Circuit precedent weigh in favor of preliminary approval of the settlement agreement. Accordingly, the Court **ORDERS:**

1.  Plaintiffs' request for conditional certification of the Settlement Class is **GRANTED** with the class defined as:

> "all individuals who are or previously were employed by Defendant who worked in California, were classified as non-exempt, and who separated from their employment between March 6, 2014 and February 20, 2018".

2.  Preliminary approval of the parties' proposed settlement agreement is **GRANTED**.

3.  The proposed PAGA award from the Gross Settlement Amount, including a payment of $37,500 to the LWDA is **CONDITIONALLY APPROVED** subject to Plaintiffs submitting confirmation that the proposed settlement of PAGA claims has been properly submitted to the Labor and Work Force Development Agency within 7 days of the date of this Order.  Any motion for final approval of the settlement **MUST** address whether the LWDA commented on the submitted settlement.

4.  Any motion for final approval of the settlement **MUST** also include the

1       Settlement Administrator's declaration of due diligence, as well as a declaration

2       confirming the number of class members to whom the Class Notice was sent and

3       successfully delivered.

4   5.   The proposed notice plan is **APPROVED**.

5   6.   Angela Conti and Justine Mora are **APPOINTED** the Class Representatives for

6       the Settlement Class.

7   7.   The firm of Blumenthal Nordrehaug Bhowmik De Blouw LLP is **APPOINTED**

8       as class counsel.

9   8.   ILYM Group is **APPOINTED** as the Settlement Administrator, with

10       responsibilities pursuant to the terms set forth in the Settlement Agreement.

11   9.   The Class Representative enhancement request for Plaintiffs is **GRANTED**

12       preliminarily up to the amount of $5,000 subject to a petition and review at the

13       Final Approval and Fairness Hearing.  Class Members and their counsel may

14       support or oppose this request, if they so desire, at the Final Approval and

15       Fairness Hearing.

16   10.   Class Counsel's request for fees not to exceed $106,250 and costs up to $12,000

17       is **GRANTED** preliminarily, subject to counsel's petition for fees and review at

18       the Final Approval and Fairness Hearing.  Class Members and their counsel may

19       support or oppose this request, if they so desire, at the Final Approval and

20       Fairness Hearing.

21   11.   The petition for attorneys' fees and for class representative enhancement fee

22       **SHALL** be filed no later than **February 9, 2023**.

23   12.   Costs of settlement administration **SHALL NOT** exceed $15,000.

24   13.   The proposed Notice Packet is preliminarily **APPROVED**, and the parties

25       **SHALL** file a finalized Notice with the required revisions for the Court's

26       approval within seven days of the date of service of this Order.

27   14.   Defendants **SHALL** provide the Settlement Administrator with the Class Data no

28       later than within 21 days of this Order.

15.     The Settlement Administrator **SHALL** mail the approved Class Notice Packet no later than 35 days from the date of this Order.

16.     A Class Member who wishes to be excluded from settlement shall postmark an Opt Out request within 45 days of the Notice Packet mailing.

17.     Any objections to or comments on the Settlement Agreement must be submitted to the Settlement Administrator within 45 days of the Notice Packet mailing.

18.     A Final Approval and Fairness Hearing is **SET** for **March 9, 2023** at 9:00 a.m. at the United States Courthouse located at 2500 Tulare Street, Fresno, California. At this hearing, the Court shall determine whether the Settlement should be granted final approval as fair, reasonable, and adequate as to the class members. The Court shall hear all evidence and argument necessary to evaluate the Settlement and other motions and requests, including the class representative enhancement request and motion for attorneys' fees.

19.     Class Members may appear at the hearing on **March 9, 2023**, in person or through his or her own attorney, to show cause why this Court should not approve the Settlement Agreement, or to object to the motion for attorneys' fees or class member representative enhancement award.  For comments or objections to be considered at the hearing, the Class Member must file comments with the Clerk of this Court indicating briefly the nature of the Class Member's comments, support, or objection.

20.     The Court reserves the right to vacate the Final Approval and Fairness Hearing if no comments or objections are filed with this Court on or before **February 9, 2023.**

21.     The Court reserves the right to continue the date of the Final Approval and Fairness Hearing without further notice to class members.

22.     The Court retains jurisdiction to consider all further applications arising from or related to the Settlement Agreement.

IT IS SO ORDERED.

Dated:   **November 7, 2022**

UNITED STATES DISTRICT JUDGE